*/ 2⁻ ⁴ N*

FIRST NATIONAL BANK, APPELLANT, v. GEORGE HEDGECOCK, APPELLEE.

FILED JUNE 10, 1910.   No. 15,975.

1. **Trial:** SUBMISSION OF CASE: ADDITIONAL INSTRUCTIONS. It is proper for the district court to further instruct the jury after the cause has been submitted, when upon written communication from the jury it appears that further instruction is necessary to enable the jury to correctly understand the issue submitted.

2. **Notes:** PROOF: CONSTRUCTION OF STATUTE. Section 1100a of the code relates only to cases before justices of the peace, and, in the county court, to cases within the jurisdiction of a justice.

3. **Appeal:** ASSIGNMENT OF ERRORS IN MOTION FOR NEW TRIAL. When in a motion for a new trial in the district court there is no general assignment of "errors of law occurring at the trial," this court will consider only such errors occurring at the trial as are specifically assigned in the motion.

4. **Evidence:** PROOF OF SIGNATURE. When the issue being tried is as to the genuineness of an alleged signature of defendant, it is proper to put in evidence signatures admitted or clearly proved to be those of defendant for comparison with the disputed signature. This comparison may be made by an expert, but he must show himself qualified before testifying to his opinion based upon such comparison.

5. ———: SECONDARY EVIDENCE. When a contract is reduced to writing, the writing is the best evidence of its terms, and must be produced, or its absence satisfactorily accounted for, in all cases where proof of the terms of the contract is offered.

6. **Appeal:** ASSIGNMENT OF ERRORS IN BRIEFS. The statute requires that the brief in this court shall set out particularly the errors asserted, and assignments not so made and definitely discussed in the brief will not ordinarily be considered.

7. ———: VERDICT: CONFLICTING EVIDENCE. The verdict of a jury will not be set aside for want of evidence to support it, if there is a substantial conflict of evidence upon the issue presented.

APPEAL from the district court for Box Butte county: JAMES J. HARRINGTON, JUDGE. *Affirmed.*

*Eugene Burton,* for appellant.

*Boyd & Barker, contra.*

SEDGWICK, J.

This action was begun in the county court of Box Butte county, and, after trial there, was appealed to the district court for that county. It is a suit upon a promissory note for $212, alleged to have been given by the defendant to the Monarch Specialty Company of Shenandoah, Iowa. The agent for that company, one J. R. Curran, made a contract with the defendant for the sale of some stock food, and he testifies that this note was given pursuant to that contract. Afterwards the said Curran presented this note to the plaintiff as the note of the defendant, and sold the same to the plaintiff. The defendant denied that he ever signed or delivered the note, and this was the question tried to the jury in the district

court. The verdict was for the defendant, and the plaintiff has appealed.

1. After the case had been submitted, the jury in writing inquired of the court if they were to decide "whether or not the defendant signed plaintiff's exhibit A (the note) in the form it now is," and if they were to decide as to the defendant's knowledge, when he signed the note, that the note was what it purported to be. The answer of the court was in writing, and was to the effect that, if the plaintiff had established by a preponderance of the evidence that the defendant signed the note in suit, they must find for the plaintiff; but, if the evidence was evenly balanced on that point, or preponderated in favor of the defendant, their verdict should be for the defendant. The court also told the jury that the defendant did not allege that there was any change made in the form or any alterations in the note, "but denies that he signed it in any form, and for that reason you are confined to the question, did he or did he not sign exhibit A?" There is no doubt of the right and duty of the court to further instruct the jury after it has retired, if it appears that such further instruction is necessary in order to enable the jury to correctly understand the issues submitted. There was no evidence offered tending to show any alteration of the note, and we do not see any error in the court's instruction in this regard. The jury were properly told that the burden of proof in this respect was upon the plaintiff, notwithstanding that the defendant had not filed in the county court the affidavit mentioned in section 1100a of the code. That section relates only to cases in which a justice of the peace has jurisdiction, and therefore the rule announced in *First Nat. Bank v. Carson,* 30 Neb. 104, does not apply.

2. The plaintiff in its motion for a new trial in the district court did not make the general assignment of "errors of law occurring at the trial," but relied upon specific assignments of errors. Under such circumstances we can only investigate such errors as were specifically

assigned in the motion for a new trial. The theory of our law is that, after a trial in the district court, the court should have an opportunity to correct any errors that may have occurred, and for that purpose it was necessary to call the attention of the court to the errors relied upon in the motion for a new trial. If there is no general assignment of "errors of law occurring at the trial," which is allowed by statute, the trial court might assume that all errors relied upon were specifically assigned in the motion. The plaintiff presented several matters in its brief in this court in which it is claimed that the court erred in the progress of the trial, but we are considering only those matters which were properly called to the attention of the trial court in the motion.

3. The defendant testified in his own behalf, and denied that he signed the note sued upon. He identified the signature to each of two separate documents as his signature. These two papers were then put in evidence for the purpose of comparing the signatures thereto with the signature of the note. The witness Pierce was shown these papers and the signature upon the note, and asked whether they were the same signatures. The defendant objected to the question, and the court sustained the objection. This was assigned as error in the motion for a new trial, and is now insisted upon. The witness had testified that he had been engaged in the banking business for several years, and that he was acquainted with the defendant, had seen him write and knew his signature, and that he believed the signature upon the note in suit was the signature of the defendant. He testified that he was not an expert in handwriting, and there was no attempt to show that he was able to say by comparison whether two separate names were written by the same person. There is nothing to show that the witness considered himself competent to do so, and we think no sufficient foundation was laid requiring the admission of the evidence.

4. The defendant testified that the contract as to the

sale of the stock food, for which plaintiff claimed the note was given, was in writing; that a duplicate was given to him and that he had misplaced it. The defendant apparently desired to prove the contents of this writing by parol evidence, and the court, it seems, considered it competent to do so, "to explain what occurred there when the note was given." The plaintiff's attorney objected that it was incompetent and immaterial. There is no doubt that evidence as to the transactions in which it was claimed that the note was given was competent, but, if the contract itself was to be used for that purpose, the general rule would apply that the best evidence of which the circumstances admit must be produced, and the writing itself would be the best evidence to prove the contract for any purpose. This rule does not exclude oral evidence of an independent fact on the ground that the same fact is included in a contract which is collateral to the issue being tried. "There is a clear distinction between proving the existence of a fact which has been put in writing and proving the writing or contents of the writing itself. If the essential fact to be proved is not the contents of a written instrument, but an independent fact, to which the writing is merely collateral, or of which it is merely an incident, there is no reason for the application of the rule." 1 Elliott, Evidence, sec. 216. We find, however, no error in connection with this matter requiring a reversal of the judgment. The statute requires that the brief of appellant shall "set out particularly each error asserted." The assignments in the brief of errors asserted as to receiving parol evidence of the terms of the contract are not in strict compliance with the statute in that respect. "The court erred in overruling plaintiff's objection to the third interrogatory and answer thereto found on page 34 of the bill of exceptions" is not a satisfactory compliance with the requirement to "set out particularly the error asserted." The interrogatories on page 34 are not numbered. Counting from the top of the page, the third sentence marked "Q" is: "What has become of it?"

**From** the prior questions and answers it appears that this question relates to the written contract, but the question does not call for the terms of the contract, and the answer, so far as the witness was allowed to go, does not relate to the contents of the written instrument. There could be no prejudice from this question and answer; at least, none that is suggested in the brief. The fourth interrogatory on page 36 is assigned in the same way. Counting unnumbered questions again from the top of page 36 of the bill of exceptions we find that the fourth question was asked the defendant by his counsel. He was asked how he was to pay for the stock food. The evidence of the witness Curran had already been given for plaintiff, in which he said that the note in suit was given in payment for the stock food, and it was competent to rebut that evidence by showing that the stock food was to be paid for in another way, and the objection was properly overruled. As to "the first interrogatory on page 37," it may be said that, as far as we are able to identify the matter aimed at in the assignment, it appears that by the question the witness was asked whether certain matter that he had testified to "was embodied in the written contract," and the answer was, "No." There could be no prejudice in this question and answer.

The witness, Brown Church, testified that he was present when the contract in regard to the stock food was made, and that the agreement was that the stock food should be "paid for as Mr. Hedgecock sold it." He was asked if Curran made any agreement as to his returning at a later date. No objection was made to the question, and he answered in substance that Curran said that when defendant ordered goods he, Curran, would come and drive with Mr. Hedgecock and pay his livery rates and help him sell them and pay him for his team. The court overruled a motion to strike out this answer. This is complained of in the brief as "the third interrogatory and answer thereto on page 54." No reason is suggested in the brief for considering this evidence incom-

18

petent, nor why this ruling should require a reversal of the judgment. There are other similar assignments, and it is sufficient to say that this court will not ordinarily consider questions of errors that are not particularly set out and definitely discussed in the brief.

5. The court allowed the defendant at the suggestion of his attorney to write his signature several times in the presence of the jury, and in some instances to write it upon one sheet of paper lying over another sheet, apparently to illustrate how a signature could be obtained on the second sheet without the observation of the signer. These sheets of paper were afterwards offered in evidence. It does not appear that there was any evidence that defendant's signature to the note was procured in such manner. The contract that defendant admitted he signed in the transaction with Curran was not in evidence, so that whether the signature to the note was obtained by such means appears to be conjecture merely. Probably no sufficient foundation was laid for admitting such experiments to the consideration of the jury. No reason, however, is pointed out in the brief for supposing that the defendant was prejudiced by this proceeding, and none occurs to us.

6. It is alleged in the brief that one of the jurors, who, it is said, was an expert with the pen, illustrated to the jury, while considering the case, how easily a signature can be imitated. We find no evidence of such a transaction in the bill of exceptions. We cannot look for it elsewhere.

7. The last and most important contention is that the verdict is not supported by the evidence. The jury are supposed to be more competent than the court to determine such issues. The defendant testified that he never signed the note in suit, and one of plaintiff's witnesses, while testifying that he believed the signature to the note was the genuine signature of defendant, said that he was not an expert in handwriting, but had often seen defendant write, and that the signature to the note was not as

defendant generally signed his name. He pointed out several points of difference, and expressed a considerable doubt as to the correctness of his opinion. It cannot be said that there is no substantial conflict in the evidence, and the verdict of the jury must be sustained.

AFFIRMED.