KATIE MAUDER ET AL. V. STATE OF NEBRASKA.

FILED DECEMBER 4, 1914. No. 18,648.

1. Criminal Law: APPEAL: AFFIRMANCE. Where the evidence upon the trial of a case is in direct conflict upon every material controverted fact, the verdict of the jury should not be overturned if there is sufficient evidence to support it. *Witt v. Caldwell*, 95 Neb. 484; *First Nat. Bank v. Hedgecock*, 87 Neb. 220.

2. Assault and Battery: INSTRUCTIONS. Instructions given, examined and sustained, as also the refusal to grant requests for instructions.

ERROR to the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Berge & McCarty,* for plaintiffs in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

HAMER, J.

The plaintiffs in error, Katie Mauder, Marie Greenamier, and Marie Folz, were charged with a simple assault and found guilty. They appeal from the district court for Lancaster county. The complaint was filed October 31, 1913, before W. T. Stevens, a justice of the peace in Lancaster county, charging an assault upon Paulina Schwint. There was a change of venue to John E. Lowe, a justice of the peace, and before him and a jury there was a trial in which the three plaintiffs in error were found guilty, along with Natalia Meisner; and Mrs. Folz and three other defendants, Jake Mauder, Peter Greenamier, and Conrad Beck were acquitted. On appeal to the district court the

three plaintiffs in error mentioned were tried before the court and a jury, and were again convicted. Each was sentenced to pay a fine of $1 and costs. The case has been given great consideration and much labor by counsel for the plaintiffs in error, whose printed brief covers 79 pages. The state also has been well represented by the attorney general's office. The bill of exceptions contains 368 pages of testimony. We have read the briefs and have given a good deal of careful study to the evidence.

The prosecutrix testified that she was in her back yard when she was surrounded by the defendants. There seem to have been five women and two men. One of these women, Mrs. Mauder, caught her by the shoulder. They were violent in their demonstrations. She says she was scared, and that she ran to the barn for protection. She opened the barn door and closed it behind her and hooked it fast on the inside. There is no dispute about the fact that these women, and at least one of the men, picked up clods, tin cans, bricks and stones and threw them against the barn. It is claimed they broke the window. They said, in substance: There is a man in there. Paulina Schwint has a man with her in the barn. They said it aloud, so that she could hear and that they had sent for the police, and would have them there in five minutes. They said this a great many times. Mrs. Schwint's testimony is corroborated by the testimony of numerous other witnesses who appeared on behalf of the prosecution. Her evidence is disputed in part by the four women who were tried and by one of the men. As there is a conflict of evidence, we do not feel justified in overturning the verdict of the jury. The verdict might have been the other way, but there is evidence sufficient to sustain it.

In *Witt v. Caldwell*, 95 Neb. 484, this court declared in the syllabus: "The evidence upon the trial of this case was in direct conflict upon every material controverted point of fact. In such case the verdict of the trial jury upon the conflicting evidence, if there is sufficient to support it, will not be molested."

In *First Nat. Bank v. Hedgecock,* 87 Neb. 220, this court said in the syllabus: "The verdict of a jury will not be set aside for want of evidence to support it, if there is a substantial conflict of evidence upon the issue presented."

Under the rule stated, we are bound to affirm the judgment of the court below, unless there is prejudicial error in the instructions given or in some other of the proceedings in the case.

We have carefully read the requests for instructions. We think that those refused were properly refused. Our attention is not called to any specific reason why these requests should have been given. They are as follows:

"Instruction No. 2. The court during the progress of the trial has allowed Mrs. Paulina Schwint, the complaining witness, to testify what she told other parties after she alleges she came out of the barn, concerning what the defendants said and did; also the court has permitted testimony of parties other than the defendants to testify what Mrs. Paulina Schwint told them after she says she came out of the barn. All of this conversation was had between the complaining witness and these parties in the absence of the defendants. This is undisputed in the record. Also, all of this conversation took place after all of the defendants had left the Schwint lot. The court now holds that these conversations are not a part of the *res gestæ,* and all of it is now withdrawn from the jury, and you are not to consider it in any way, and you are to consider this case just as though you had heard none of this testimony. Refused.

"Instruction No. 3. You are instructed that, before you can find defendants guilty, the evidence must establish their guilt beyond a reasonable doubt. Mere suspicion of guilt, however strong, or a preponderance of all the evidence in the case against the defendant, will not do upon which to base a verdict of guilty. A reasonable doubt is a term often used, probably well understood, but not easily defined. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot

say and feel that they have an abiding conviction to a moral certainty of the truth of the charge. If upon the proof there is a reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal, for it is not sufficient to establish a probability, though a strong one, arising from the doctrine of chances, that the facts charged are more likely to be true than the contrary, but the evidence must establish the facts to a reasonable and moral certainty, a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it. This is proof beyond a reasonable doubt. Refused.

"Instruction No. 4. You are instructed that, if the defendants, at the time and place charged in the complaint, believed that tramps or other trespassers had gone upon the property of their neighbor, Mrs. Schwint, and had gone into her barn, it was not unlawful for those defendants to go to the barn and upon the premises of Mrs. Schwint, for the purpose of extending to her friendly aid and protecting her property against marauders, and if in so doing the defendants, or those with them committed acts that otherwise might constitute an assault upon the complaining witness, Paulina Schwint, and did such acts before learning the identity of the person, and before knowing that their acts were directed against said Paulina Schwint, and that as soon as they became aware of the identity of said person, and that it was Paulina Schwint, the defendants desisted in their conduct and departed from said Paulina Schwint, and her premises, then the defendants were not guilty of any offense. Refused."

"Instruction No. 6. Should the jury believe beyond a reasonable doubt that the defendants gathered about Paulina Schwint, at the time and place alleged in the complaint, though the conduct of the defendants may have shown that they were laboring under excitement and may have frightened said Paulina Schwint, and at said time said Paulina Schwint may have believed the defendants intended to do her harm and injury, yet, unless the jury believe beyond a reasonable doubt that the defendants did

such acts with the intention of harming or injuring said Paulina Schwint, they must find the defendants not guilty. Refused."

We have also read the instructions given by the court upon its own motion. They seem to be justified by the facts as shown by the evidence. Each of the instructions given by the court upon its own motion is excepted to. We have read all of these instructions, and will briefly state the contents of such of them as we do not copy.

The first instruction is simply a description of the charge made, and the statement that the defendants made a plea of not guilty.

The second contains a definition of an assault. It defines it as "an attempt with unlawful force or threats made in a menacing manner to inflict bodily injury upon another accompanied with the present ability to give effect to the attempt." It also contains the idea that the person who attempts to strike, touch or do any violence to another must have the "intention and the apparent present ability to do such violence" before he can be guilty of the assault.

The third is concerning the presumption of innocence. It is stated in it "that the law presumes the defendants to be innocent until they are proved guilty beyond a reasonable doubt. The plea of not guilty casts upon the state the burden of establishing by evidence all the material allegations in the indictment beyond a reasonable doubt."

The fourth instruction tells the jury that they may find some of the defendants guilty and acquit others. It also tells the jury that, if they were all actuated by a common purpose to commit the assault, then they are all guilty, although only one of their number may have taken hold of the prosecuting witness.

The fifth contains a definition of reasonable doubt. The instruction as given might have been written in better and clearer language, but it does not appear to be prejudicial. It reads: "A reasonable doubt is that state of the mind which, after an entire comparison and consideration of all the evidence, giving due and proper weight and credibility

Mauder v. State.

to it, leaves the mind in such condition that you cannot say that you feel an abiding conviction, to a moral certainty, of the guilt of the accused. By a reasonable doubt is not meant that the accused may possibly be innocent of the crime charged against them, but it means some actual doubt having some reason for its basis. A reasonable doubt that entitles to an acquittal is a doubt reasonably arising from all the evidence or want of evidence in the case. Given."

We do not deem the sixth instruction prejudicial. If it is wrong, it is favorable to the accused. They may not complain of it, because its effect before the jury could not well be otherwise than to point toward an acquittal. It reads: "You are instructed that, to constitute the offense of assault with which these defendants are charged, an intent to do injury or harm or some other unlawful act toward the person assaulted is necessary. Acts which may be sufficient to constitute an assault, if done without any intent to do harm or injury to another, or, if not done in the perpetration of some other unlawful act, do not constitute an assault; and, before one can be found guilty of an assault, the jury must believe beyond a reasonable doubt that the acts constituting the assault were committed with such intent to do harm or injury to the person assaulted, or else done in the perpetration of some other unlawful act. Given."

The seventh tells the jury that the intent "with which an act is done is a mental process, and, as such, generally remains hidden within the mind where it is conceived, and is rarely, if ever, susceptible of proof by direct evidence." That may all be true, but it does not appear in what way it is material or prejudicial.

In the eighth instruction the jury are told that the testimony of any witness who wilfully testifies falsely as to a material fact may be disregarded, and that the credibility of the witnesses is for the jury. There are other statements in it concerning the consideration of the conduct, intelligence and fairness of the witnesses and the

97 Neb. 25

reasonableness of the story told by them. This is a sort of stock instruction much used in the trial of cases, and we perceive nothing wrong in it.

The ninth instruction relates to the selection of a foreman.

Several affidavits were filed in support of an application for a new trial. They purport to be based upon newly discovered evidence. Apparently they aim to create the impression that the prosecutrix is an immoral person. That is not the thing to be determined in this case. The question is whether the parties charged are guilty of an assault on Paulina Schwint.

The brief prepared by counsel for plaintiffs in error shows a great deal of labor, but, as we understand it, section 8192, Rev. St. 1913, and the rule of this court which governs the preparation of briefs in such cases are disregarded. The brief wholly fails to make a specific statement of any of the errors sought to be complained of. There are four alleged assignments of error. They seem to be classifications of a subject, but they fail to tell us what is wrong with the proceedings in the case. *Witt v. Caldwell, supra.*

In *First Nat. Bank v. Hedgecock, supra,* it is said in the syllabus: "The statute requires that the brief in this court shall set out particularly the errors asserted, and assignments not so made and definitely discussed in the brief will not ordinarily be considered."

We quote what is offered in the brief. The heading is:

"Propositions of Law.

"1. Wherever an issue is suggested by the testimony which is favorable to accused, the court must instruct the jury on that issue, and a failure to do so is reversible error. * * *

"2. The court must give an affirmative instruction on every theory of the defense. A mere negative instruction will not answer. A failure to do so is reversible error. * * *

"3.  If an instruction tendered is faulty or erroneous, yet, if it calls the attention of the court to any theory of the defense supported by evidence, it is erroneous for the court to fail to give a proper instruction covering such theory. * * *

"4.  In a criminal case, where an issue is made in the evidence of a defensive character, it is reversible error where there is no instruction expressly authorizing an acquittal."

No specific error is charged in any one of the foregoing subdivisions.  In another and different place these subdivisions might not be without merit, but we do not think they are applicable here.  Notwithstanding that fact we have read the evidence and studied the case, and find the contention of plaintiffs in error to be without merit.

The judgment of the district court is

AFFIRMED.

LETTON, J., not sitting.

SEDGWICK, J., dissents.