JENS C. TAULBORG, APPELLANT, V. SOPHUS B. ANDRESEN ET AL., APPELLEES.

FILED JANUARY 8, 1930.   No. 26500.

*Gray, Brumbaugh & McNeil*, for appellant.

*Edward J. Shoemaker, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY and DAY, JJ., and REDICK and RYAN, District Judges.

RYAN, District Judge.

This is an action by Jens C. Taulborg against Sophus B. Andresen and Hazel Andresen for damages resulting from an automobile accident. The plaintiff alleges in his petition that on the 3d day of October, 1926, while he was riding toward Omaha as a passenger in an automobile driven by one Amos Giller, defendants negligently and without warning backed a truck, owned and operated by them, from a place just off the edge of the paving on the right-hand side of the Military highway, in front of and against the car in which the plaintiff was riding; that as a result thereof the plaintiff was seriously injured and suffered damages.

The specific acts of negligence charged against the defendants were their failure to observe a proper lookout for cars approaching from the west along the Military highway, which the defendants knew was a highway upon which cars were almost continually passing, and in their failure to sound their horn or in any manner announce their intention to back the truck onto the highway and in front of the approaching line of traffic.

The defendants' answer was a general denial and an allegation that at the time of the collision the defendants' truck was standing parallel to the pavement, and that it was standing still and was headed in an easterly direction. Defendants further alleged that the plaintiff and the driver of the car in which the plaintiff was riding were negligent, in that they drove at a dangerous rate of speed and did not have the car under control. The reply of the plaintiff was a general denial. At the conclusion of plaintiff's evidence the court upon motion directed a verdict in favor of the defendant Hazel Andresen and dismissed the action as to her. This action is not complained of and is sustained by the evidence.

It appears from the record that the accident occurred a short distance northwest of the city of Omaha, at a place where Seventy-second street intersects the Military highway, and that the Military highway is a paved road connecting the cities of Omaha and Fremont. The defendants were operating a fruit stand near the place where the accident occurred. The evidence is in hopeless conflict as to the manner in which the accident occurred. Plaintiff claims, and introduced evidence tending to show, that the defendant, Sophus B. Andresen, backed his truck onto the paved highway in front of the automobile in which the plaintiff was riding, as it approached from the west. The defendant denies this and introduced testimony to the effect that the automobile in which the plaintiff was riding was being operated at a very high rate of speed, and that as it approached a place opposite to where the truck was standing it swerved off from the pavement and struck the defendant's truck and in this collision the plaintiff was injured.

The plaintiff makes numerous assignments of error, but they may be considered under two general headings: First, misconduct of counsel for the defendants; and, second, errors of law occurring at the trial.

The specific misconduct complained of on the part of defendants' counsel is a reference in his opening statement to the financial condition of the defendants, wherein he referred to them as "living on a rented farm." This same line of conduct was continued in the examination of the defendants as witnesses. Plaintiff further complains that the defendant was permitted to testify that he did not have any insurance on his car at the time the accident occurred.

The alleged error of law complained of consisted in the court submitting to the jury, after they had retired for deliberation, a memorandum, delivered to them in the jury room by the bailiff, being an instruction given by the court defining the term "Proper Lookout," without notice to the parties or their counsel and not in the presence of the parties or their counsel. It appears that the jury retired for

deliberation on October 26, 1927, at 9:25 a. m.; that at 2:50 p. m. they sent the following communication to the court: "Honorable Judge Rait. Will you please define for this jury what is meant by 'consisted in his failure to observe a proper lookout for cars approaching from the west?' This jury would appreciate your definition of the word 'lookout' as pertaining to automobile driving. W. B. Griffin, Foreman of Jury." That without notice to the parties or counsel and not in the presence of the parties or their counsel the court sent the following reply to this communication: "Gentlemen. In answer to the above inquiry you are advised that 'Proper Lookout' means to look out for or observe approaching cars, providing a person ordinarily prudent would have looked for or observed approaching cars under the circumstances surrounding this accident. 2:50 p. m. Attach to instructions. James E. Rait, Judge."

The verdict of the jury was returned at 4 o'clock p. m. Counsel for plaintiff argues that it is evident, from the communication of the jury to the court and the request for the definition of the term "Proper Lookout," that the jury were committed to the plaintiff's theory as to the manner in which the accident occurred, and that the instruction given by the court, without notice and not in the presence of parties or their counsel, was prejudicial error.

We shall consider the assignments of error in their order. In an action for damages by reason of alleged negligence of another, evidence of the financial standing of the parties is clearly inadmissible. If a party has sustained damages by reason of the negligence of another, he is entitled to a verdict for the amount of the damages which he is able to prove, and no more, and he is entitled to such a verdict regardless of the ability of the defendant to pay. As was said in Laidlaw v. Sage, 158 N. Y. 73, where similar evidence had been admitted: "It has ever been the theory of our government and a cardinal principle of our jurisprudence that the rich and poor stand alike in courts of justice, and neither the wealth of the one nor the poverty of the other shall be permitted to affect the administration of the law."

As to the showing that the defendant was not protected by liability insurance the appellee relies upon the case of *Jessup v. Davis,* 115 Neb. 1. In that case, following the doctrine announced in *Miller v. Central Taxi Co.,* 110 Neb. 306, this court held that it was error for the court to sustain an objection to interrogatories which tend to develop the fact as to whether the defendant is indemnified from loss by an insurance company. This doctrine appears to have been announced by the court and adopted as a rule of practice in this state by reason of the fact that the insurance companies by virtue of the insurance contract are given the absolute right to control the defense of any action that may be brought and become the sole interested parties defendant to the extent of the amount of the insurance.

In the *Jessup* case, *supra,* the court said: "In the form of the proceeding before us the real defendant, though unnamed apparently, as a matter of fact, seeks to avail himself of the benefit of the vouchments of the ostensible party defendant. Under the terms of the contract of insurance, it cannot be said that the witness apparently called and vouched for, as to veracity and standing by the apparent defendant, is, in fact, his witness, when he is actually selected and called as the witness of the real party in interest, the insurance company, and entitled to no other vouchment. Indeed, the entire theory of legal procedure outlined in these contracts for liability insurance contemplates a proceeding carried on secretly, by a real, though unknown, party in interest, making use of concealment and deception. Its essential nature is therefore incompatible with an 'open court' and judgments publicly and openly arrived at. To compel and permit such proceeding is to countenance and participate in what is tantamount to a fraud."

The reasoning supporting the rule which permits a plaintiff to show that an insurance company is actually defending an automobile damage suit is not applicable to the facts in the instant case. It is apparent from the record that the plaintiff was satisfied that the defendant was the

real party in interest and tried his case upon that theory, and it was improper to permit the defendant to emphasize the fact that he was the real party in interest.

We come now to the instruction given by the court to the jury without notice to the parties or counsel. The matter of instructions to juries is covered by statute. Comp. St. 1922, secs. 8796, 8799. Those sections read as follows:

"Section 8796. The court must read over all the instructions which it intends to give, and none others, to the jury, and must announce them as given, and shall announce as refused, without reading to the jury, all those which are refused, and must write the words 'given,' or 'refused,' as the case may be, on the margin of each instruction."

"Section 8799. After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where the information upon the point of law shall be given, and the court may give its recollection as to the testimony on the point in dispute in the presence of or after notice to the parties or their counsel."

Commenting upon these sections of the statute, this court, in the case of *McDuffie v. Bentley,* 27 Neb. 380, in an opinion by Cobb, J., said: "From the language of this section it is clear that it was the intention of the legislature to make it the duty of the trial court to read to the jury all instructions given to them on the trial of a cause; or, in other words, to make the method of giving instructions that of reading them to the jury. The statute not only imposes upon the court the duty of reading the instructions to the jury, but insures to every suitor the right to have all the instructions which he shall present, and which shall be deemed proper to be given to the jury, read to them, at length, by the court. A refusal or neglect to discharge this duty, and a denial of this right to a suitor, in any cause, are administrations without that 'due process of law' required by the Constitution of this state, and must be held to be reversible error."

The appellee seeks to justify the giving of the supplemental instruction, without notice to the parties or their counsel, on the ground that it was not an instruction but merely a communication, and cites the cases of *First Nat. Bank v. Hedgecock*, 87 Neb. 220, and *Music v. Adams*, 96 Neb. 298.

In *First Nat. Bank v. Hedgecock, supra,* the court gave an additional instruction upon the issues in controversy and the burden of proof. It does not clearly appear from the opinion whether this instruction was given in open court or sent to the jury room, and the case merely decides that "it is proper for the district court to further instruct the jury after the cause has been submitted, when upon written communication from the jury it appears that further instruction is necessary to enable the jury to correctly understand the issues submitted."

In *Music v. Adams, supra,* the communication was simply a question and answer, and in no wise attempted to state the issues or to instruct the jury as to the law concerning them, and in that case the court held the communication was not prejudicial.

If it becomes necessary to give further instructions to a jury while it is deliberating, the proper practice is to call the jury into open court and to give any additional instructions in writing in the presence of the parties or their counsel.

The supplemental instruction given in this case, however, is an erroneous statement of law. One of the most important disputed questions of fact in the case was whether or not the defendant backed his truck onto the highway. It is evident that the jury were discussing this question at the time the foreman made the request for the supplemental instruction. The instruction given by the court left it for the jury to decide what sort of a lookout, if any, the defendant should have kept for cars approaching along the highway. The highway in question is a paved highway leading into the city of Omaha, and is what is termed an "Arterial Highway." If, as the plaintiff contends, the defendant was backing his truck onto said high-

way, he would necessarily be operating it against the line of approaching traffic from the west. The law does not forbid the backing of an automobile upon the streets or highways, and to do so does not constitute negligence, but the driver of an automobile must exercise ordinary care in backing his machine, so as not to injure others by the operation, and this duty requires that he adopt sufficient means to ascertain whether others are in the vicinity who may be injured. It is his positive duty to look backward for approaching vehicles and to give them timely warning of his intention to back, when a reasonable necessity for it exists; and he must not only look backward when he commences his operation, but he must continue to look backward in order that he may not collide with or injure those lawfully using such street or highway. 42 C. J. 935; Blashfield, Encyclopedia of Automobile Law, pp. 529-533; Berry, Automobiles (4th ed.) secs. 235, 954; Huddy, Automobiles, p. 324; *Lee v. Donnelly*, 95 Vt. 121.

The supplemental instruction, being erroneous, was prejudicial, and a new trial must be granted. The judgment is therefore reversed and the cause remanded to the district court for a new trial.

REVERSED.