Lloyd Salyers, Jr., et al., plaintiffs in error, v. State of Nebraska, defendant in error.

66 N. W. 2d 576

Filed November 5, 1954.   No. 33562.

John J. Lawlor and Eugene D. O'Sullivan, Jr., for plaintiffs in error.

Clarence S. Beck, Attorney General, and Robert V. Hoagland, for defendant in error.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Simmons, C. J.

This matter comes here by petition in error.

The three petitioners, hereinafter called defendants, were jointly charged with assault and battery upon one C. R. Swint. The defendants were tried in the county court, found guilty and sentenced to 90 days imprisonment in the county jail, and required to pay costs. Defendants appealed to the district court, where a jury

trial was had. A verdict of guilty was returned as to all defendants. A motion for a new trial was made and overruled. Defendants were sentenced to imprisonment in the county jail for 60 days and to pay the costs of prosecution.

The two defendants Salyers advance here the contention that the evidence was insufficient to warrant the submission of the issue of their guilt to the jury, and is insufficient to sustain the jury's verdict. All three defendants request a reduction in the sentence under the provisions of section 29-2308, R. R. S. 1943.

We affirm the judgment of the trial court.

The sufficiency of the evidence to sustain the conviction of the defendant Godkin is conceded. There is no evidence that the defendants Salyers, or either of them, struck the complaining witness.

The complaining witness will herein be referred to as Swint and, where necessary, the defendants Salyers by the names used at the trial, Lloyd and Vern (Wilfred), and the defendant Godkin as Godkin.

We summarize the evidence as to those matters which go to sustain the submission of the case to the jury and to sustain the jury's verdict. On many points, the State and defendants' witnesses are not in accord. For the purposes here, we need not point out the conflicts, as the credibility of the witnesses was for the jury to determine.

Swint, on the day involved, was city policeman at Neligh and was off duty at 5 p. m.

During the early evening, the defendants were in a liquor store. Swint came in. One of the three defendants was heard to say: "There is Mr. Swint * * * I wonder if he is off duty, if he is we are going to beat * * * him." (The words deleted indicated a violent physical assault.)

Also while in the store, Lloyd had been asked by Swint to remove a cattle trailer from the streets, this being pursuant to his orders as a policeman.

Also at that time, Vern insisted on buying a bottle of whiskey for Swint. Swint purchased a case of beer and went home where he had guests watching television.

Shortly thereafter, the three defendants came to the Swint home in Vern's automobile. Vern entered the home and offered whiskey to Swint's guests. Swint suggested that he and Vern leave the house, which they did. They got into Vern's car and there "we had a drink." Vern was driving. Lloyd was in the front seat with him. Godkin and Swint were in the rear seat. They drove out of town to the south where they stopped. Swint was ordered out of the car. Godkin got out and a fight followed. Swint was injured enough to be bleeding at the lips. Vern or Lloyd stopped the "scuffling." The four then started back to town.

The mayor of Neligh operated a drive-in theatre east of the city. On the way to town it was decided to take Swint to the mayor. They then drove past the theatre about a half mile. The car was again stopped. Swint was ordered out of the car. Godkin then knocked him down two or three times. Swint's face and head were cut and bruised in several places, resulting in a brain concussion.

The four men then drove to the theatre, located the mayor and after visiting with him a few minutes, the mayor testified that Vern said, "I want to show you your cop." Vern opened the car door and asked Swint to get out.

Lloyd said to the mayor, "Here is your cop." The mayor believed Swint to be drunk. He promptly discharged Swint.

The defendants then took Swint to a garage, washed the blood from his face, nose, lips, and ear, had another drink, and then took Swint home.

Section 28-201, R. R. S. 1943, provides: "Whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he were the principal offender."

The trial court instructed on the liability of one who aids, abets, solicits, or encourages another person to commit an offense. The instruction is not challenged here.

We have held in civil litigation that: "In an assault and battery, not only he who is the actor or actual perpetrator of the offense, but he also who, being present when the act is done, aids and abets therein, is a principal and liable as such at the suit of the injured party." Cooney v. Burke, 11 Neb. 258, 9 N. W. 57.

In the body of the opinion it is said that the aider and abettor "becomes a principal therein and punishable as such."

This decision was followed in Acree v. North, 110 Neb. 92, 192 N. W. 947. The rule is applicable in criminal cases. See, Mauder v. State, 97 Neb. 380, 149 N. W. 800; 5 C. J., Assault and Battery, § 260, p. 758; 6 C. J. S., Assault and Battery, § 101, p. 958.

The rules are: "A common purpose among two or more persons to commit a crime need not be shown by positive evidence but may be inferred from the circumstances surrounding the act and from defendant's conduct subsequent thereto." "* * * it is only where there is a total failure of proof to establish a material allegation of the information, or the testimony is of so weak or doubtful a character that a conviction based thereon cannot be sustained, that the trial court is justified in directing a verdict for the defendant." Callies v. State, 157 Neb. 640, 61 N. W. 2d 370.

The evidence sustains the judgment of the trial court. The assignments are without merit.

This brings us to the contention that the sentences of the court are excessive and should be reduced under the provisions of section 29-2308, R. R. S. 1943, which provides: "In all criminal cases that now are, or may hereafter be pending in the Supreme Court on error, the court may reduce the sentence rendered by the district court against the accused, when in its opinion the sentence is excessive, and it shall be the duty of the Su-

preme Court to render such sentence against the accused as in its opinion may be warranted by the evidence."

The applicable rule is: "Where the punishment of an offense created by statute is left to the discretion of a court, to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed unless there appears to be an abuse of such discretion." Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380.

Under the facts and circumstances as determined by the jury's verdict, we find no abuse of discretion in the sentences imposed.

The judgment of the trial court is affirmed.

AFFIRMED.