STATE OF NEBRASKA, APPELLEE, V. OSCAR BERG, APPELLANT.

129 N. W. 2d 117

Filed June 19, 1964. No. 35722.

H. V. Kanouff and Lester L. Dunn, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The defendant was charged with unlawfully operating a motor vehicle while under the influence of intoxicating liquor in violation of a statute relating to the operation of motor vehicles. The charge was brought before a justice of the peace of Saunders County. The defendant was found guilty of the offense charged, and was sentenced to pay a fine of $100 and his license to operate a motor vehicle was suspended for 6 months. The defendant appealed to the district court for Saunders County. The case was tried to a jury in the district court, and the jury rendered a verdict of guilty. The defendant filed a motion for new trial which was overruled. The defendant was sentenced to pay a fine of $100 and costs, and to serve 7 days in the county jail of Saunders County. His motor vehicle operator's license was revoked for a period of 6 months during which time he was not to drive a motor vehicle, the 6 months to begin after the fine was paid and the sentence served. The defendant appealed.

Kenneth Grossoehme testified that he was a police officer in the city of Wahoo, and was on duty March 7, 1963, from 6 p.m., until 6 a.m., March 8, 1963; that he had occasion to contact the defendant just before midnight; that he stopped the defendant 2 or 2½ miles south of Wahoo; that he first saw the defendant in

Wahoo when he was driving an automobile on the wrong side of the street, going south; that he followed 3 or 4 blocks behind the defendant; that he observed that the defendant's car was weaving across the centerline of the highway and at times would go onto the right shoulder of the highway; and that the speed of the defendant's car was around 40 miles an hour. This witness further testified that he pulled up beside the defendant when he stopped him, and talked to him. He asked the defendant for his driver's license and requested him to get out of the car. He asked the defendant if he had been drinking. The defendant said he had had a couple of beers, and showed the officer his driver's license. This officer advised the defendant that he was under arrest for driving while intoxicated. The defendant was taken to the jail office in Wahoo, and was told again that he was under arrest. The officer asked the defendant for a blood or urine test. The defendant consented to a blood test. A doctor was called. The doctor came to the jail and withdrew a sample of blood. After the blood sample was taken it was put in a vial in an envelope, and the envelope was sealed. The information necessary in such cases was written on the envelope. This officer took the blood sample to the city hall and put it in the refrigerator about 12:30 or 12:45 a.m., on March 8, 1963. He believed he went back to get the blood sample the evening of March 9, 1963, and gave it to trooper Wolbert, and that was the last time he saw it. This witness further testified that he did not administer any tests to the defendant; that the defendant's clothing was neat; that the defendant's eyes were bloodshot, his speech was slurred, and his breath smelled of liquor; and that the defendant staggered when he walked. This officer gave as his opinion that at the time the defendant was arrested he was under the influence of intoxicating liquor.

Trooper Wolbert, connected with the Nebraska Safety Patrol, testified that on or about March 9 or 10, 1963,

he recalled police officer Kenneth Grossoehme delivering a package to him when he was about a mile and a half north of Wahoo, at approximately 1:45 a.m.; and that this package had writing on it showing the defendant's name and that it contained a blood specimen that was drawn by a doctor in Wahoo. He took the package to the police station in Fremont and placed it in a refrigerator which was unlocked for him and then relocked.

A chemist who does all kinds of chemical and bacteriological work and had done similar work since 1942, testified that he held permit No. 1 issued by the Nebraska Department of Health; that this permit authorized him to perform chemical tests on blood; that the permit states: "For determining alcoholic content of body fluids," which would include blood; and that the permit specifies the Haggar method. This witness further testified to an exhibit received in evidence which contained a specimen that he analyzed on March 11, 1963; that when he first saw this specimen it was locked in the refrigerator at the Fremont police station; that the desk sergeant unlocked the refrigerator; that this witness took the specimen of blood out of the refrigerator; and that the exhibit was made up of a glass vial which had been placed in a white envelope, and the envelope was sealed when it was removed. He took this specimen of blood and placed it in the refrigerator in his laboratory, and the following morning, March 11, 1963, he began an analysis of the specimen to determine the alcoholic content of the blood contained in the vial. He further testified that he performed the Haggar test in doing this. This analysis showed that the blood contained .23 percent alcohol by weight. On cross-examination this witness testified that there was a discrepancy in his records when he said he picked up the specimen at 4:30 p.m., on March 11, 1963, and kept it in a frozen state until his analysis was begun at 8:40 a.m., on March 11, 1963, and completed at 9:55 a.m., on March 11, 1963; and that the

records in the police station show that he picked up the specimen on March 10, 1963.

The defendant testified that he had no trouble driving his car; that when he was picked up he was driving at a rate of speed of 35 to 40 miles an hour; that he does limp a little bit due to the fact that he suffered a broken hip as a result of an automobile accident; and that he was not under the influence of intoxicating liquor at the time he was arrested.

In rebuttal testimony Kenneth Grossoehme testified that he did not have the defendant walk a straight line because the defendant had a bad leg.

Section 39-727, R. S. Supp., 1961, provides in part: "It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle while under the influence of alcoholic liquor * * *. Any person who shall operate or be in the actual physical control of any motor vehicle while under the influence of alcoholic liquor * * * shall be deemed guilty of a crime and, upon conviction thereof, shall be punished as follows: (1) If such conviction is for a first offense, such person shall be imprisoned in the county jail for not more than three months, or shall be fined one hundred dollars, or both such a fine and imprisonment, and the court shall, as part of the judgment of conviction, order such person not to drive any motor vehicle for any purpose for a period of six months from the date of his final discharge from the county jail, or the date of payment or satisfaction of such fine, whichever is the later, and shall order that the operator's license of such person be revoked for a like period; * * *."

Section 39-727.01, R. S. Supp., 1961, provides in part: "In any criminal prosecution for a violation of section 39-727, relating to driving a vehicle while under the influence of intoxicating liquor, or of section 28-403.01 when it is charged that defendant's unlawful operation of a motor vehicle consisted of the operation of a motor vehicle while under the influence of intoxicating liquor,

the amount of alcohol in the defendant's body fluid at the time alleged, as shown by chemical analysis of the defendant's blood, * * * shall give rise to the following rebuttable presumptions: * * * (3) If there was 0.15 per cent or more by weight of alcohol in the defendant's body fluid, it shall be presumed that the defendant was under the influence of intoxicating liquor at the time the specimen was taken. The presumptions thus arising shall not be conclusive but shall be sufficient to establish a prima facie case upon the issue of whether or not the defendant was under the influence of intoxicating liquor. Other competent evidence may be introduced upon such issue, and the presumptions arising and such other evidence, if any, shall all be considered in determining the guilt or innocence of the defendant."

The defendant, when arrested, chose to submit to a blood test as provided for in section 39-727.04, R. S. Supp., 1961.

There is no issue raised relating to the competency of the chemist in this case to make the test that he did. He was duly authorized by the Department of Health of the State of Nebraska, by a permit, to make tests to analyze the blood to determine the alcoholic content.

The defendant's assignments of error are to the effect that the chemist made an error in his notes, and that the sentence of the trial court was excessive.

Under the circumstances as shown by the evidence, we find no reason to disturb the sentence given the defendant by the trial court. In Uldrich v. State, 162 Neb. 746, 77 N. W. 2d 305, this court said: "The applicable rule is: 'Where the punishment of an offense created by statute is left to the discretion of a court, to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed unless there appears to be an abuse of such discretion.' Salyers v. State, 159 Neb. 235, 66 N. W. 2d 576." We find no reason or justification for interfering with the sentence

imposed. The defendant's contention is without merit. See, also, § 39-727, R. S. Supp., 1961.

The testimony relating to the discrepancy in the notes made by the chemist in this case was admitted without objection. The facts relating to this matter were for the jury to determine. As stated in State v. Wilson, 174 Neb. 86, 115 N. W. 2d 794: "It is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. * * * In a criminal action this court will not interfere with a verdict of guilty based upon conflicting evidence unless the evidence is so lacking in probative force that as a matter of law it is insufficient to support a finding of guilt beyond a reasonable doubt." See, also, State v. Nichols, 175 Neb. 761, 123 N. W. 2d 860.

Since the above evidence relating to the discrepancy in the notes of the chemist does not go to the principal matter pertaining to the percentage of alcohol in the defendant's blood at the time of his arrest, and since it was corrected, there is no merit to the defendant's assignment of error relating to this subject.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.