State of Nebraska, appellee, v. Robert Lee Knecht, appellant.

147 N. W. 2d 167

Filed December 22, 1966.   No. 36322.

Richard C. King, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and HASTINGS, District Judge.

BROWER, J.

The defendant and appellant, Robert Lee Knecht, was convicted and sentenced for the crime of burglary by the district court for Douglas County, and has appealed to this court from an order overruling his motion for a new trial.

The case was consolidated in district court for trial with that of two other defendants, Ruth Ann Duncan and Bobby Joe Weiland, but the appeal of Robert Lee Knecht alone is now before us and he will be designated herein as the defendant.

It is first urged that there was not sufficient evidence to submit the State's case to the jury, for which reason the trial court should have sustained defendant's motion for a directed verdict made at the conclusion of the State's evidence, or at any rate, granted a new trial. We will therefore at this point review the evidence as disclosed by the record.

On August 23, 1965, between the hours of 2:30 and 3 a.m., George W. Grixby, employed nights as a window washer, was walking in the vicinity of Sixteenth and Douglas Streets in Omaha, Nebraska. He heard a pounding and about the third or fourth pound heard glass break and a burglar alarm go off. He looked from a distance of about half a block toward the front of the jewelry store operated by the Zales Jewelry Company. There he saw a person run from the store to an automobile parked against the curb. The back of this car was colored orange below and white above. It proceeded south on Sixteenth Street to Farnam Street where, after stopping momentarily, it ran through a red traffic light. He was unable to testify that anyone else was at the scene or in the automobile because he did not observe further

although the area was well lighted. He could not iden-
tify any of the three accused. About 10 minutes later
a police officer appeared.

Alphonse Powell, a sergeant on the Omaha police
force, was operating a cruiser car. Hearing the alarm
ringing, he drove to the Zales store, arriving at 3:05
a.m. He noted a large pane of glass was broken with
fragments thereof on the walk and within the store. The
ring section in the display window near the break was
disturbed. The officer met Grixby at the store front
and was informed by him of what he had seen. There-
upon the officer stepped to his cruiser and put forth a
general broadcast of the robbery and Grixby's informa-
tion concerning the car.

Carl Ciciulla, a plain clothes police officer, was operat-
ing a cruiser car eastward on Vinton Street. He stopped
his car on Sixteenth Street for a red light where he
noticed an automobile with three occupants making a
right-hand turn at Sixteenth and Vinton Streets, and
thereafter proceeding west. The car observed was white
and faded orange, being an older model Lincoln. Min-
utes later, at approximately 3 a.m., a "general pickup"
came through for a car matching the color of that which
he had seen.

At approximately 3:30 to 3:40 a.m., police officer
Edward Skar, who had heard the radio bulletin from
Zales, observed a white over orange 1956 Lincoln automo-
bile with Iowa plates at Twenty-fourth and Vinton
Streets, proceeding eastward on Vinton Street. The offi-
cer's cruiser was then going west on the same street. He
turned about and attempted to stop it at Twenty-third
Street, and succeeded in doing so at Eighteenth and
Vinton Streets.

Three persons were in the front seat of the stopped
vehicle, including the defendant. The codefendant Ruth
Ann Duncan was the driver. Particles of glass were in
the car and on the floor was a 4-way tire lug wrench,
gloves, and a small black ring holder. A price tag

marked $12.95 was on the front seat. Later a search warrant was procured, and from the glove compartment numerous rings, some in cases, and a watch were taken. Four rings and five ring holders were admitted in evidence and identified by the manager as having been taken from Zales Jewelry Store. Not all the items taken from the store were received in evidence.

The three occupants of the car stopped were identified as the defendant and the two others with whom he was tried. They were placed under arrest and taken to central police headquarters. There is evidence the occupants had been drinking, but none of the officers indicated either the defendant or the other occupants were so intoxicated that they did not realize what was going on or were incoherent. They seem to have promptly followed instructions given them.

Defendant testified on his own behalf that he had started drinking whiskey at his own home about 9 o'clock in the morning before the robbery and continued to drink into the evening. The last thing he remembered was when drinking at the Pussy Cat Bar, having an argument with Ruth Duncan concerning her dancing with another man. The next thing he recalled was waking up in jail.

Defendant's contention that there is not sufficient evidence to submit the State's case to the jury is based to a great extent on the testimony of Grixby that he saw only one man at the scene of the crime. He did not, however, say there was none other there, but only that he did not observe any other. The cross-examination by defendant's counsel on this point follows: "Q. But you only saw one person out of the car? A. I only saw one person out of the car. Q. In fact, you only saw one person; is that correct? A. That's right, just one person is all I saw. Q. You didn't see another soul in the car? A. No; I didn't look that far. I mean, I just didn't observe it. All I could see was just the one person. Q. That's right, you just saw one person, and that might have been all there was there, as far as you know? A. That's

right. Q. And this is a very well-lighted area there? A. It is in front of the jewelry store." Grixby had testified he observed the color of the car from its back which was all he saw.

We here cite certain rules applicable to the present case.

"Whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he were the principal offender." § 28-201, R. R. S. 1943.

In Miller v. State, 173 Neb. 268, 113 N. W. 2d 118, this court said: "A common purpose among two or more persons to commit a crime need not be shown by positive evidence but may be inferred from the circumstances surrounding the act and from defendant's conduct subsequent thereto. * * * Participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed."

"The credibility of witnesses and the weight of the evidence are for the jury to determine in a criminal case and the verdict of the jury may not be disturbed by this court unless it is clearly wrong." Small v. State, 165 Neb. 381, 85 N. W. 2d 712, 70 A. L. R. 2d 984.

"It is only where there is a total failure of proof to establish a material allegation of the information, or the testimony is of so weak or doubtful a character that a conviction based thereon cannot be sustained, that the trial court is justified in directing a verdict for the defendant." Salyers v. State, 159 Neb. 235, 66 N. W. 2d 576.

Jewelry stolen from the display window at Zales Jewelry Store was found in the car in which the defendant rode. Broken glass was seen in it. The defendant, when apprehended, was with the same person in whose presence he had been drinking beforehand. An officer testified he saw three persons in a similar vehicle on Vinton Street at 3:05 a.m. There is evidence a similar vehicle was stopped and the defendant with two companions apprehended therein a few minutes thereafter. The brief period between the burglary and the arrests

is quite significant. There is evidence from which the jury might have inferred he was present at the burglary and participated in it. We conclude that the evidence disclosed by the record is sufficient to support a verdict of guilty and the defendant's contentions to the contrary are without merit.

Defendant maintains the trial court erred in allowing the confession of Ruth Ann Duncan, a codefendant, to be admitted in evidence without proper instructions as to its use and without setting forth that it was not applicable to the defendant Knecht. Defendant also objects to instruction No. 13 which relates to the requirements concerning the admission and use of the confession. The defendant does not argue in his brief that the confession was not properly obtained from Mrs. Duncan, nor that the foundation made to the court alone or to the jury was insufficient or improper. His contention is that although it might have been admissible against she who made the confession, it was erroneously and prejudicially received against the defendant herein. In the present case, the defendant and his codefendants were tried jointly as authorized by statute, section 29-2002, R. R. S. 1943. The confession was relevant and material to the issue presented as to the codefendant Ruth Ann Duncan.

There is a recent extensive annotation beginning at 4 A. L. R. 3d 671, with respect to admissibility of statements of coconspirators made after termination of conspiracy and outside accused's presence. The initial statement, with respect to the annotation's scope, states: "The term 'conspiracy' is employed in a broad sense herein to cover not only the technical offense of conspiracy itself, but also the commission of a particular substantive crime in concert, the scope of the annotation thus extending to trials for conspiracy alone, conspiracy and a substantive crime charged in separate counts, and trials for a substantive crime alone where it was committed in concert." At page 678 of the annotation, it is stated:

"Authorities have agreed that as a general rule, subject to certain exceptions, incriminating, inculpatory, extra-judicial declarations of a coconspirator made in the absence of or without the knowledge of the accused, after the conspiracy has come to an end through withdrawal or arrest of the participants, or termination of the plan in success or failure, are inadmissible in evidence in a criminal trial to prove the guilt of one other than the declarant." The multitude of cases there cited include Zediker v. State, 114 Neb. 292, 207 N. W. 168, where the rule was applied by this court. Other cases are cited throughout the note where convictions have been set aside because statements or confessions of another participant to the crime were admitted in evidence. These often relate to the trial of a single defendant who did not make the statement. Those of the annotated cases involving joint trials where a reversal took place are generally those where the trial court did not make clear that the statements or confessions could not be considered by the jury against anyone but the one who made it. On page 714, it is stated: "It has been held or recognized in a large number of cases that postconspiracy statements of coconspirators may be received in evidence in joint prosecutions of conspirators, regardless of possible prejudice which could, and in some cases did, result to a nondeclarant defendant from the jury's hearing of these statements and any references therein which incriminated a nondeclarant, where the court has properly instructed the jury as to the restricted application of such evidence, that is, solely to prove the guilt of the declarant." A large number of cases are cited under this statement. We think this rule should be and is adopted by this court and applied here to the joint trial of a crime committed in concert as indicated in the definition of the scope of the annotation.

In State v. Hall, 176 Neb. 295, 125 N. W. 2d 918, this court considered both the question of whether consolidation might be ordered where a confession of a codefend-

ant was involved and the admissibility of such a confession at a joint trial. There the consolidation was permitted and with respect to the admission of the confession the court stated: "In the instant case the trial court gave long-approved cautionary instructions to consider any statement or confession only as to the defendant making it." It is apparent this court was then applying the rule to the annotation. No error is urged here with respect to the consolidation. In the case before us, instruction No. 13 limits the consideration of "any such statement or admission so made solely in the case of the defendant making the same." Instruction No. 13 appears to be proper under the general rule hitherto stated. Although it is long, its length was required in order to set forth the various requirements which the jury must find existed before a confession could be considered. Defendant seems to argue that the instructions should either have made the confession applicable only to Ruth Ann Duncan by name, or inapplicable to defendant by name. We do not think this was necessary. It did clearly restrict the consideration of the confession to the codefendants making it and we deem it sufficient for that purpose. Instruction No. 13 further provided: "Though the defendants are tried together, it is your duty to separately consider the guilt of each defendant. Evidence relating to one defendant may not be considered against any other defendant. A finding of guilt against any defendant, if such you should find, shall in no manner be considered in your determination as to any other defendant. You will not permit any defendant to be prejudiced by reason of the fact that the defendants are tried together." The two instructions correctly set forth the law applicable. The contention of the defendant cannot be sustained.

Defendant maintains the trial court erred in not granting his motion for a mistrial when evidence of other crimes were brought into the case. The first incident complained of was on the direct examination of officer

Edward Skar who was being questioned concerning articles taken from the car in which the defendants were riding when stopped by him. The testimony follows: "Q. Now, what you recovered from the vehicle, is this what you have been talking about, the gloves, the lug wrench and the - I count one, two, three, four, five ring holders and four rings; is that all the property that was taken from the car? A. No, sir. Q. Were there other items? A. Other rings, yes, sir, and one Bulova watch. Q. Do you know why those rings and the Bulova watch aren't here? A. From personal knowledge, no, but they were turned over to the Council Bluffs Pottawattamie County authorities." Thereupon the defendant's counsel, out of the presence of the jury, moved for a mistrial, stating this testimony, that the articles had been turned over to the Iowa authorities, indicated they were subjects of other crimes, and the defendants and each of them were therefore entitled to a mistrial. He did not ask the answer be stricken. There was no direct evidence of another crime but only an inference thereof as stated by defendant's counsel. The defendant cites cases holding that a mistrial should be granted where evidence of other crimes is brought into the record. It is not necessary to discuss these cases here. It is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the crime with which the accused is charged even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes. State v. Rand, 238 Iowa 250, 25 N. W. 2d 800, 170 A. L. R. 289, and cases cited in the annotation following 170 A. L. R. 306. See, also, Peery v. State, 165 Neb. 752, 87 N. W. 2d 378, where the same rationale was followed. Clearly there was no error in refusing a mistrial under circumstances where the articles taken from the car were a part of the State's case and the prosecution felt it necessary to account for the absence of some of those articles testified to by others.

The second incident which the defendant claims points to the commission of other crimes relates to the testimony of Maurice P. Barrett, a police officer who was asked questions in reference to whether an attempt was made to obtain a statement from Bobby Joe Weiland, the other codefendant. In that examination, the following transpired: "Q. Did you advise him of his right to counsel? A. I did. I also advised him I was going to get a statement from Ruth Ann Duncan implicating him in the Zales Jewelry. Q. What was his reply? A. He said he didn't want to talk about it; he was out on a bond at that time and he didn't want to discuss anything. MR. KING: (Out of hearing of jury) Comes now counsel for defense and moves the court at this time for a mistrial for the reason that the officer now testifying before this court has indicated that a conversation with one Bobby Joe Weiland was, in substance, that he wasn't going to talk to him because he was already out on bond, and the implication of being already out on bond would tend to connect the defendant, Bobby Joe Weiland, with another crime, and would tend to prejudice the jury against the defendant herein, and moves for a mistrial specifically in favor of Bobby Joe Weiland. THE COURT: (Out of hearing of jury) Motion is overruled." The inference of the commission of another crime which defendant's counsel implied was apparent was chargeable only to the codefendant Weiland and not to the defendant appealing here. The motion for mistrial seems to have been made particularly on behalf of the codefendant. We fail to see how this evidence prejudiced the defendant appealing here. The contention is without merit.

We cannot sustain the defendant's assignments of error and it follows that the judgment and sentence of the trial court are affirmed.

AFFIRMED.

WHITE, C. J., concurring.

I concur in the opinion of the court herein. The State

made a motion in the trial court for a consolidation of the cases which were thereafter tried together. The defendant then had counsel of his own choosing who continued to act thereafter throughout the trial in district court and on appeal here. No objection was made to the consolidation at that time and no motion for severance or issue with respect thereto was made in the trial court thereafter. Defendant made no objection to the offer of the confession in evidence in the trial court. Defendant's brief in this court assigns no error and presents no argument with respect to the consolidation. No error is assigned to the admission of the confession except as relates to the instructions to the jury with respect thereto which is discussed in the court's opinion. Under such circumstances the defendant should not be permitted to assert his own failure as a basis for a new trial. A defendant will not be permitted to sit by with indifference to any rights he may assert and take his chances on a favorable verdict and when it is adverse to raise such claimed errors to obtain a second chance at a verdict more favorable to him.

A synopsis of the evidence is contained in the opinion of the court. I think it was sufficient to submit the issue of the defendant's guilt to the jury.

BOSLAUGH, SMITH, and McCOWN, JJ., dissenting.

The conviction in this case rests upon evidence that the defendant was apprehended while riding in an automobile operated by Ruth Ann Duncan; the automobile had been used in the commission of a burglary a short time before; and the defendant had been in the company of Ruth Ann Duncan earlier that day. There is no other evidence to identify the defendant with the crime.

The case is complicated by the fact that the defendant and Ruth Ann Duncan were tried jointly, and her confession, which implicated the defendant, was received in evidence. Unlike the defendant in State v. Hall, 176 Neb. 295. 125 N. W. 2d 918, the defendant in this case testified that he had no knowledge of the burglary and

he has never confessed or admitted implication in the crime.

Although the defendant did not object to the admission of the Duncan confession as against him at the time it was offered and did not move for a severance or a mistrial on that ground, because of the particular circumstances in this case we are unable to say that the defendant received a fair trial. We believe the judgment should be reversed and the cause remanded for a new trial.