# PHIL GREER v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 14, 1911.

Nos. 17,190—(173).

**Negligence of master — evidence.**

The jury were justified by the evidence in finding that the defendant was guilty of negligence in failing to maintain a guard over the toggle clutch in a bull wheel, in failing to properly instruct the plaintiff in his work of operating the coal chute, and in omitting to warn him of the dangers.

**Assumption of risk.**

The plaintiff was not conclusively proven to have assumed the risks.

**Contributory negligence.**

The question of plaintiff's contributory negligence was a question for the jury.

**Same — charge to jury.**

The court did not err in instructing the jury on the question of assumption of the risks.

**Opinion evidence — question of danger.**

Expert testimony was permissible on the question of the dangerous character of the machinery.

**Damages.**

The verdict was not excessive.

[1] Reported in 132 N. W. 6.

[Note] Master's duty to warn or instruct servant, see notes in 44 L.R.A. 33 and in 21 L.R.A. (N.S.) 89.

Action in the district court for Wright county to recover $35,000 for personal injuries. The complaint alleged plaintiff was twenty-five years of age, with little knowledge or experience with machinery, and was earning $52 per month at the time of the accident; that after the accident he was unable to do any kind of work, was permanently crippled and will never be able to do any work of value. The case was tried before Giddings, J., and a jury which returned a verdict in favor of plaintiff for $15,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Brown, Albert & Guesmer,* for appellant.

*F. A. Latham* and *C. A. Pidgeon,* for respondent.


Lewis, J.

While employed in operating defendant's coal chute at Morris, Minnesota, September 24, 1909, plaintiff's hand was caught in the clutch gear on the inside of the bull wheel and his arm was torn from the socket. The complaint charged that defendant was negligent in permitting the bull wheel and clutches to be out of repair, in failing to inspect the machinery, in failing to guard the clutches, in failing to instruct the plaintiff, and in failing to warn him of the dangers connected with running the machinery. The answer pleaded the general denial, and the defense interposed at the trial was that plaintiff assumed the risk, was guilty of contributory negligence, and that the machinery was not out of order. Plaintiff recovered a verdict of $15,000. Appeal by defendant from an order overruling its motion in the alternative for judgment notwithstanding the verdict or for a new trial.

The coal chute consisted of a platform and a room twelve by twelve feet constructed at an elevation of about forty-five feet, in connection with coal sheds and railway tracks, so that cars of coal could be drawn up on an incline at one end of the platform and unloaded into the sheds. The engine which operated the machinery was on the ground underneath the platform, and the bull wheel clutch and drum arrangement which wound up the cable was lo-

cated in the elevated room. The cable passed from the drum through the shed and was attached to the cars on the track.

The bull wheel was seven feet in diameter, and was connected by cogwheels with the engine. This wheel revolved slowly, only about one revolution per minute. The drum was located at right angles to it, and the machinery was so constructed that when it was desired to haul up a car the drum was attached to the bull wheel by means of a toggle clutch arrangement. This clutch was operated by a hand wheel located at the opposite end of the drum, and by tightening it the toggle clutch arrangement drove certain friction arms into V-shaped grooves on the inside of the rim of the bull wheel; thus making the drum and bull wheel as one fixed piece of machinery. The result was that the drum wound up the cable as the bull wheel was turned by the engine. There were six of these toggle clutch arrangements, each operating in one of six different sections of the bull wheel. By releasing the hand wheel at the end of the drum, the friction arms were separated from the rim of the bull wheel, and the latter went on if the engine was in motion while the drum did not wind up.

1. In describing the accident, plaintiff testified that he was pulling a car up the incline when the clutch slipped and the car started back; that it caught, went up a ways, and again slipped. He went up a ladder at the front end of the shed, and entered the room where the drum and wheel were located, and first tightened up the hand wheel, and then went around on the opposite side of the bull wheel, and put his hand on the knuckle of a bolt in the toggle, when the clutch began to revolve and caught his hand.

It should be here stated that only one of the clutches was exposed, and this was caused by the failure to keep it covered with a guard which had been furnished for that purpose. It was into this exposed machinery that plaintiff placed his hand. Plaintiff testified that the clutch had slipped on previous occasions, and that he thought he had helped it by applying oil to the toggle bolt or knuckle. After the accident the employer put ashes and rosin into the groove between the friction arm and the rim of the bull wheel, and found that it did not slip thereafter.

The exposed clutch was an extremely dangerous piece of machinery, and the evidence is sufficient to show that defendant was negligent in allowing the guard to remain off. It had been off for months, and there appears to have been no inspection, oversight, or attempt to keep it on. Plaintiff was not warned of the dangers, and was not instructed as to the intricacies of the machinery and the proper manner to oil and operate it in case it should slip. Defendant claims that the machinery was in perfect condition, and that the clutch would not have slipped, had not plaintiff put oil into it. His conduct in so doing will be referred to under the next head, but it was fairly a question for the jury whether or not the friction arm had become worn and unsuitable for the purpose. That it held afterwards when ashes and rosin were applied to the groove does not free defendant from the charge of negligence in permitting it to get into that condition, or in continuing to use it without properly instructing plaintiff how to operate the machine when the friction arms slipped.

2. Whether the plaintiff assumed the risk was for the jury to decide. He had been a helper off and on for over two years at another coal chute, and had been in charge of the one at Morris nearly two months; but he had always been a common laborer, working on a farm or on the section, was not a machinist, nor in any way received special or technical training. His knowledge of how to run the chute was of the most general and crudest kind. He knew how to start and stop the engine, and the purpose of and how to manipulate the handwheel. He knew that in some way the hand wheel had the effect of applying and releasing the friction arms. So far as his appointed duties and required knowledge were concerned, the most ordinary workman could qualify in a few days. The company made no pretense of requiring the services of a machinist or an expert in that service.

It is true that he made application for the place through defendant's agent at his former place of residence, and it was represented by the agent that he was qualified. He probably was qualified to perform the ordinary routine of starting and stopping the engine and machinery. But he made no representation as a machinist or

expert, and the defendant knew what his qualifications and experience as a helper had been.

He denied oiling the groove, but admitted that he put oil on the toggle pin, and admitted that some of it may have dripped into the groove. He seemed to have an idea that the clutch or toggle parts did not operate freely, and, if oiled, the friction arm would fit tight into the groove to hold fast. It cannot be fairly claimed that his intention in oiling the pin was to make the friction arm slip more easily in the groove. He was hauling up a car when the jerking and slipping back occurred, and he understood that the arm did not hold tight enough. While the toggle clutch was located in a dangerous place between the spokes of the bull wheel, he placed his hand on the toggle pin for the momentary purpose of seeing whether it was loose. It happened that the instant he did so the friction arm slipped in the groove, the clutch whirled around with the descending car, and his hand and arm were caught. It was an open question whether, under all the circumstances, he should have known and appreciated the dangers connected with the single act of investigating the source of the trouble.

What has been said applies also on the question of his negligence. He might have avoided danger by stopping the engine or letting the car down the incline before making his investigations, or he might have reported the condition to his superior, or he might have used a stick to find out if the pin was loose. A man of greater knowledge of the intricacies of the machinery, or one with more extended experience, would probably have done these things. But plaintiff is to be judged with reference to the knowledge he possessed, and in view of his experience. So judged, it became a question of fact for the jury.

4. The court instructed the jury that a person, in accepting employment, assumes the danger, usual risks, and perils incident thereto, and also all the risks which he knows, or may in the exercise of reasonable care know, to exist. "He does not, however, assume the unusual or extraordinary risks of the employment, nor does he assume such risks as arise from or are created by the master's negligence, nor does he assume risks that arise from latent or hidden

defects or conditions; but he does assume all risks that are obvious or known to him, or in the exercise of reasonable care may be known to him." This is criticised as misleading, on the ground that the jury were informed that the plaintiff did not assume any risks growing out of any act of negligence on the part of the defendant. It is evident that, although one sentence taken by itself would be misleading, when read in connection with the entire charge, the meaning is plain. He assumed only those risks which were incident to the employment and were obvious or known; but he did not assume latent, unknown, or hidden defects, although arising from the master's negligence. "Reasonable care" and "ordinary care" are terms often employed to express the same meaning, and there was nothing misleading in this instance. Other exceptions were taken to parts of the charge and to refusals to give certain requests. We discover no errors in this respect.

5. The witness Vogel was properly qualified as an expert, and it was within the discretion of the court to permit him to testify that the machine was dangerous. The dangerous condition of the machine was a fact at issue, and the jury might have passed on the question without the aid of expert testimony, yet this case does not fall within the rule that expert evidence is inadmissible, when the jury are as competent as experts to pass on the question. The machine was complicated, and the danger not necessarily apparent to the ordinary juror. We consider the question permissible under the rule that, when the subject-matter of the inquiry lies so far outside the range of common knowledge and experience that the jury are presumably unable to pass upon it intelligently, expert evidence is admissible. Anderson v. Fielding, 92 Minn. 42, 99 N. W. 357, 104 Am. St. 665.

6. The verdict was not excessive.

Affirmed.