Daniel C. Hellerich, appellee and cross-appellant, v. Central Granaries Company, cross-appellee: Nebraska Elevator Company, appellant and cross-appellee.

Filed July 14, 1920.        No. 20736.

1. **Master and Servant**: Personal Injuries: Negligence. In an action to recover damages for personal injuries resulting from the sudden spinning of a sprocket wheel while plaintiff was at work with his arms between the spokes, the evidence discussed in the opinion *held* sufficient to sustain a finding that the machinery was negligently set in motion by the automatic shifting of a belt from a loose pulley to a fast pulley while the engine was in motion.

2. ———: ———: ———: Appliances. The failure of an employer to furnish an appliance required by statute for the safety of employees may be evidence of negligence.

3. ———: Appliances: Duty of Employer. It is the duty of the employer to exercise reasonable care for the safety of a workman in a hazardous position, and not to expose him to injury by use of dangerous appliances or unsafe places to work, when the exercise

Hellerich v. Central Granaries Co.

of due skill and care will make the appliances and places reasonably safe.

4. ————: NEGLIGENCE: QUESTION FOR JURY. Where the evidence is sufficient to sustain a finding that an employer did not furnish the employee a reasonably safe place to work, the issue is one for the jury, if properly raised by the pleadings.

5. **Damages.** A judgment for $18,900 for personal injuries *held* not excessive.

6. **Appeal:** REMITTITUR. Where the trial court, in an action to recover damages for personal injuries, orders plaintiff to file a remittitur as a condition of overruling a motion for a new trial, the order will not be reversed on appeal, if there is a substantial basis in the evidence for a finding that the verdict is excessive to the extent of the amount required to be remitted.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*F. M. Hall, H. W. Baird* and *F. D. Williams,* for appellant.

*W. B. Comstock, contra.*

MORRISSEY, C. J.

The plaintiff, Daniel C. Hellerich, brought this action against his employer, the defendant, Nebraska Elevator Company, to recover damages for personal injuries resulting from alleged negligence. In the answer to the petition, the defendant, in addition to a general denial, pleaded contributory negligence and assumption of risk. Upon a trial of the issues there was a verdict for the plaintiff in the sum of $28,900. As a condition of overruling the motion for a new trial, the district court ordered, and the plaintiff filed, a remittitur in the sum of $10,000. From a judgment in favor of the plaintiff for $18,900, the defendant appeals.

The principal assignment of error is the failure of the trial court to sustain a motion by the defendant to direct a verdict in its favor on the ground that the evidence is insufficient to show negligence on its part or to sustain a verdict in favor of the plaintiff.

The defendant operated a grain elevator at Agnew, using a gasoline engine for power. Chris Hellerich, father of the plaintiff, was the defendant's agent in charge of the elevator when the injury occurred. The plaintiff had formerly acted in that capacity, but had not recently been in the employ of the defendant. While a car was being loaded with grain April 26, 1917, the grain-cup pulley in the elevator head in the cupola of the building slipped on the shaft and the movement of grain stopped. Chris Hellerich employed the plaintiff, who understood the machinery, for the specific purpose of tightening the pulley described so that it would not turn on its shaft. During the afternoon on the date mentioned, the plaintiff, in an effort to tighten with a monkey-wrench the set screws running to the shaft through the hub of the grain-cup pulley, put his arms between spokes of the sprocket wheel on the same shaft, a proper method, and, while at work in that position, the sprocket wheel was suddenly set in motion by power from the engine, and both of his arms were broken and mangled.

The engine is in a pit in a lean-to below the floor of the elevator, and the power is transmitted to a fast pulley on the line shaft by a horizontal engine belt. By means of a sprocket wheel on the line shaft under the elevator floor and a perpendicular endless chain, the power is transmitted to the sprocket wheel on the shaft in the elevator head, the elevator leg being 30 feet or more in height. In addition to the sprocket wheel on the line shaft and the fast pulley on the same shaft, there is a loose pulley. The engine is started by revolving a wheel on the engine shaft. While the belt is on the loose pulley, the sprocket chain which turns the shaft in the elevator head does not move, though the engine is in motion. To start the sprocket chain and to revolve the sprocket wheel in the elevator head, it is necessary to shift the belt from the loose to the fast pulley. The shifting device is a belt shifter, and the one used by the

defendant had been made out of a two by four scantling about six feet long. It is suspended through the elevator floor above the belt near the fast and the loose pulleys. Bolted to the lower end of the scantling there is a metal fork with a prong extending below the upper part of the belt on either edge. The upper end of the scantling is tapered for a handle, and it is operated on the elevator floor by moving it back and forth at right angles with the belt below.

The theory of the plaintiff is that by reason of defects, growing out of negligence, the machinery was set in motion automatically or without direct human agency at the time he was injured. Under issues raised by the pleadings, the trial court submitted to the jury four allegations of negligence, namely: (1) The belt shifter was defective and would not keep the belt on the loose pulley; (2) a rest hook to keep the belt away from the shafting was required by statute but not furnished; (3) the defendant permitted the engine to run while the plaintiff was at work in a hazardous position; (4) the plaintiff was not provided with a reasonably safe place to work.

In the argument by the defendant it is insisted that there is no evidence to sustain a finding in favor of the plaintiff on any issue submitted to the jury, and that a failure of proof on any one of them requires a reversal.

1. The first question to be considered is the evidence relating to the charge that the belt shifter was defective. The metal fork on the lower end was loose, and there is testimony that it would swing back and forth a distance variously estimated from an inch and a half to about four inches. The belt is about five inches in width. The face of the loose pulley is six inches wide and that of the fast pulley is seven inches wide. The diameter of each at the edge is the same. They are an eighth of an inch or more apart, without any friction between them. Both are crowned; that is, the face is

slightly convex to keep the center of the belt on the center of the pulley. The corners at the ends of the belt where it had been recently laced had been known, according to a witness, to strike the prongs of the belt shifter which, when free, hung perpendicularly. In that position, says one witness, about half of the belt would be on each pulley. A pin was used to keep the belt shifter in place. The hole where the pin was inserted in a timber was worn, and sometimes the pin as a result of shocks or vibrations would drop out. It had fallen out and was not in place at the time of the injury. In addition to evidence of this nature, there is also testimony by Chris Hellerich that the belt often automatically ran off the fast pulley onto the loose one; that the fast pulley would turn "as soon as it was caught by the least little bit of the belt;" that he was near the belt shifter when the accident happened, and that neither he nor any one else then shifted the belt to the fast pulley; that the engine was left running with the belt on the loose pulley while the plaintiff was working in the cupola, without warning, his arms being through the sprocket wheel there. Looking at the case thus far considered as if the witnesses who so testified told the truth, and as if no one started the machinery, it may be inferred that the belt shifter, in connection with all of the other machinery and appliances under all of the circumstances, the engine being in motion, was defective; and it may also be likewise inferred that the machinery which injured the plaintiff was automatically set in motion through the negligence of the defendant.

On the contrary, the defendant insists that inferences of negligence in view of other evidence do violence to unquestioned physical conditions, to natural laws, and to the laws of mechanics as shown by uncontradicted evidence. The defendant argues that there can be no reasonable difference of opinion on these issues, and that the jury should not have been allowed to indulge in mere speculation as to the proximate cause of the acci-

dent. The evidence relating to the premises from which defendant proceeds in its argument has been examined in detail, but only a portion of it can be epitomized here. It tends to show that the belt shifter had no office to perform except to shift the belt from one pulley to the other while the engine was in motion, and that for such a purpose it was without defect; that the belt shifter was not intended to keep the belt on either pulley, but that the pulleys were crowned for that purpose; that neither the weight nor the position of the belt shifter under the existing conditions could possibly result in shifting the belt from the loose to the fast pulley; that the belt had often shifted from the fast to the loose pulley of its own volition, but had never shifted the other way; that the crowning of the pulleys and a slight variance in the alignment of the engine and the line shafts tended to pull the belt away from the fast to the loose pulley; that the edge of the belt hung over the edge of the engine pulley on the side next to the loose pulley, showing a tendency to run away from the fast pulley; that it required considerable weight, ten or twelve pounds, to shift the belt from the fast to the loose pulley, and practically nothing to shift it the other way; that there was no weight or friction sufficient to move the belt from the loose to the fast pulley; that the belt, running from the loose pulley to the fast pulley, would not set the sprocket wheels in motion until the belt lapped four inches on the fast pulley; that the belt in running automatically from the loose to the fast pulley would not start the machinery suddenly, as it had been started, but would give a warning application of power by a jerk and recede from and reapproach the highest surface of the crown on the fast pulley alternately until the lap was sufficient to produce a continuous motion—an operation which did not take place; that these facts are established by actual tests of the machinery in controversy; that the tests were made by experts whose testimony cannot be refuted, when con-

sidered with physical conditions and the laws of mechanics.

On the evidence as a whole, it is argued by the defendant that there is no reasonable hypothesis on which testimony that no one set the machinery in motion is believable; that the defendant did not know and could not have discovered by ordinary care any defect which could cause the belt to shift to the fast pulley of its own accord; that the accident could not have been foreseen by any degree of diligence on the part of the defendant.

There is testimony, however, that the belt shifter had in fact been used by the defendant to keep the belt in place when the machinery was in motion, and that in pursuance of such a purpose it had been fastened in a stationary position at different times; that the crown on the loose pulley was increased subsequent to the accident; that the experts made their tests after the change; that the load on the engine when the tests were made was heavier than the load at the time of the accident. This leaves the issue in doubt with sufficient proof on each side.

It seems to follow that the tests and the testimony of the experts in connection with the proofs as a whole do not amount to a demonstration that the accident did not result from the automatic shifting of the belt, and, there being sufficient evidence in favor of the plaintiff on this point, there was no error in submitting the issue to the jury. On the questions of the plaintiff's assumption of risk, of his contributory negligence, and of the defendant being chargeable with knowledge of conditions, the evidence justifies the verdict rendered.

2. Was there error in submitting to the jury the issue of negligence on the part of the defendant in failing to furnish a rest hook? The statute provided for one. The legislature required the defendant to furnish or construct such guards and protection as will protect all employees against injury from belting or shafting,

to furnish belt shifters or other safe mechanical contrivances, for the purpose of throwing on or off belts or pulleys, and to provide rest hooks which will hold the belting free from the shafting. Rev. St. 1913, sec. 3597. There is evidence tending to show that the use of a rest hook would have prevented the belt from shifting to the fast pulley automatically, and that the system of the loose and the fast pulleys, as operated by the defendant, did not prevent such shifting. The rest hook was not furnished. The defendant answered this charge of negligence by proof that the loose pulley took the place of the rest hook and was a compliance with the law. The statute, however, uses the specific term "rest hook," which is not the same device as a loose pulley, and we think the trial court did not err to the prejudice of the defendant, under the circumstances, in submitting to the jury proof of the failure to comply with the statute as evidence of negligence.

3. Was the evidence sufficient to carry the case to the jury on the issue of negligence in allowing the engine to run with the belt on the loose pulley while the plaintiff was working with his arms through the sprocket wheel in the cupola? In this hazardous place the plaintiff, according to his testimony, was at work on the machinery without knowing that the engine in the pit below was in motion. At the time, it may be inferred, the loose handle of the belt shifter was vibrating above the floor of the elevator where a slight movement would apply the power below and spin the sprocket wheel in the cupola. A brother of the plaintiff was near the engine when the plaintiff was injured. Others had access to the floor of the elevator. The agent in charge spent a portion of his time in an office in a separate building. Under such circumstances, we see no error in permitting the jury to find negligence in allowing the engine to run. If defendant had stopped it, the hazard of revolving machinery would have been removed and the injury prevented. It is

the duty of the employer to exercise reasonable care for the safety of a workman in a hazardous position, and not to expose him to injury "by use of dangerous appliances or unsafe places to work, when the exercise of due skill and care will make, the appliances and places reasonably safe." *Myers v. Pittsburgh Coal Co.*, 233 U. S. 184. We think that there was no error in allowing the jury to find that there was negligence in allowing the engine to run.

4. Was there evidence that the defendant was negligent in failing to provide the plaintiff a reasonably safe place to work? If the conclusions already reached on the other issues are proper deductions from the evidence, and we think they are, it may fairly be inferred that the plaintiff did not have a reasonably safe place to work, and that his exposure in this respect was a failure on the part of the defendant to exercise ordinary care. If we have made no mistake in our rulings on the sufficiency of the evidence, there is no error in submitting the issues to the jury.

Complaint is also made of the recovery as excessive after the amount was reduced by remittitur from $28,900 to $18,900. When injured, the plaintiff was a robust man 28 years of age. He testified he had been earning $200 a month as a live stock buyer and shipper. He was in the hospital 14 weeks, suffered intense pain, and underwent four surgical operations. He lost his right arm, and at the time of the trial the bones of his left arm had not united. On these facts we do not think the judgment is so excessive as to require a reversal or an additional remittitur.

The plaintiff appealed from the order requiring him to file a remittitur in the sum of $10,000 as a condition of overruling the motion for a new trial. The right to file a remittitur conforming to an order of the trial court and afterward to assail the order as erroneous is granted by statute. Laws 1915, ch. 247. Where the trial court orders a remittitur, there must be a substantial

reason or basis in the evidence for the decision that the verdict is excessive. In the present case the evidence does not show that the plaintiff will be prevented from pursuing his business of buying and selling live stock, or that he will be permanently deprived of the use of his left arm. For these reasons, there is no error available to the plaintiff.

AFFIRMED.

LETTON, ROSE and FLANSBURG, JJ., not sitting.