L. R. WALKER, Appellant, v. ROOSEVELT HOTEL COMPANY et al., Appellees.

No. 41048.

MARCH 8, 1932.

REHEARING DENIED JUNE 24, 1932.

Wheeler, Elliott, Shuttleworth & Ingersoll, for appellee Roosevelt Hotel Company.

Marvin C. Levsen and Barnes, Chamberlain, Hanzlik & Thompson, for appellee Troy Laundry Company.

Donnelly, Lynch, Anderson & Lynch, for appellant.

EVANS, J.—The accident upon which the suit is predicated occurred at 5:30 P.M. on April 4, 1930, in, or near, a certain hallway on the third floor of the hotel of one of the defendants. The first named defendant owned and operated the Roosevelt Hotel at Cedar Rapids, and will be referred to herein as the "Hotel Company." The Troy Laundry Company owned and operated a laundry in the same city, and will hereafter be referred to herein as the "Laundry Company." The plaintiff at the time of the accident was, and for two years had been, a guest or roomer in the hotel of the Hotel Company. The alleged injuries of the plaintiff resulted from his tripping over a cart or truck used in the hotel for the purpose of transporting daily the linen of the hotel to its linen room. Neither defendant has any interest in the business of the other, as such. Neither defendant is a servant, employee, or agent of the other. It is not claimed in the petition that either defendant is liable in any degree for the negligent acts of the other. The liability of each is predicated by the plaintiff upon allegation that each by his own concurring negligence contributed to the consummation of plaintiff's injury. The Hotel Company was a comparatively new enterprise, which had begun operation three or four years before the date of the accident. One of the problems in its enterprise was to make provision for its laundry work. It contracted in writing with the defendant Laundry Company, a going laundry concern in the same city, for the performance of all its laundry work for a compensation stated in the contract. A part of the arrangement was that the Laundry Company should do all transportation of the laundry, both soiled and clean, and that the clean laundry should be daily delivered at the linen room of the Hotel Company, which room was upon the third floor of the Hotel. Under this arrangement these parties had operated uniformly and consistently up to the time of the accident, and since. The hotel had two passenger elevators and one freight elevator, all located in close proximity to each other. One Clarence Jacque, an em-

ployee of the Laundry Company, was in sole charge of the transportation of the hotel laundry back and forth between the laundry and the hotel linen room. The clean laundry was first unloaded from the laundry truck into the basement of the hotel. It was contained in large baskets. In the hotel basement these baskets were placed in the freight elevator and transported therein to the third floor. The distance between the freight elevator and the linen room on third floor was about 100 feet. The transportation of the baskets from the freight elevator to the linen room was done by means of a small handcart, capable of carrying two baskets at a time. This handcart was brought up from the basement in the same freight elevator as the baskets. Upon delivery of the baskets at the linen room, the handcart was returned first to the freight elevator and then back to the basement, where it was kept under lock and one key, which key was kept in the exclusive possession of Jacque. It was on a return trip of this handcart from linen room to the freight elevator that plaintiff tripped upon it. The detailed circumstances of the accident are quite essential to an understanding of its legal aspects. On the third floor of the hotel is a hallway, which extends from east to west across the entire building. It is 116 feet in length. The linen room is at its east end. On the north side of the hall is a series of guest rooms facing south upon the hall. Near the west end of this hall is a so-called alcove which extends to the north for a distance of 9 feet. The width of this alcove from east to west is about 7 feet. On each side of this alcove, east and west, are the passenger elevators. Their doors respectively face the alcove and face each other. At the north end of this alcove is a door, which opens into a so-called service hall. Into this service hall the door of the freight elevator opens. To pass from the freight elevator to the linen room, one passes from the elevator into the service hall, from the service hall south into the alcove through the north door of the alcove, then through the alcove into the east and west hallway, then east along the hallway to the linen room. At the time of the accident, Jacque had delivered the clean linen at the linen room. He was returning with his cart to the freight elevator. He brought his cart into the alcove and was in the act of opening the north door thereof in order to pass through to the freight elevator, when one passenger cage came to the third floor and opened its door for the discharge of *its*

passenger, the plaintiff herein. Another guest (witness Anselme) was in the alcove waiting for the elevator to carry him down. The plaintiff stepped out of the elevator into the alcove and in some way, quite unexplained in the record, tripped upon the cart and fell to the floor in the main hallway ten feet distant from the cart. The fall resulted in an injury, in the nature of a sprain, to the "small of his back."

When the Laundry Company first began to perform its contract, it used no cart. Jacque put his baskets on the freight elevator and took them out on the third floor. He then dragged the baskets through the alcove and over the hallway to the linen room. This method appeared to be damaging to the carpets, and the Hotel Company asked for a better method of delivery. The handcart was the result of this request. It consisted of a mere skeleton made of angle iron two inches square. The framework thus constructed was laid upon iron casters about six inches in diameter. Later, rubber cushioned tires were put upon the casters. At one end was a so-called upright handle. This was made by the use of two upright pipes connected at the top with a cross bar. This served the convenience of the operator as a handle to pull or to push the cart. The cart was about four feet in length and two feet in width. Its main frame extended from the floor to a height of about six inches, and the handle bar was waist high. This cart was used daily by Jacque in the performance of its functions for the two years during which plaintiff had been a guest, and plaintiff was entirely familiar with it.

The petition alleged a deficiency of light. No proof was introduced in support of that allegation. On the contrary, the witnesses on behalf of the plaintiff, as well as the plaintiff himself, testified to the adequacy of the light. The plaintiff testified that as he stepped from the elevator he saw Jacque, but did not see the cart. He testified also that he could have seen it if he had looked.

The theory of joint recovery indicated in the petition of the plaintiff, is that the Laundry Company was liable because of the alleged negligence of Jacque, its employee, in that Jacque on the occasion of the accident had brought the cart into the alcove and had stopped it there where passengers from the elevator might collide with it. In the evidence, stress seems to have been laid upon the circumstance that the north end of the truck extended

about one foot and a half into the space opposite the elevator doors, and that to such extent it presented a manifest obstacle to the egress of passengers. It is averred also that for a long time Jacque had used the cart in the hall and in the alcove negligently and had left the same therein frequently unattended. This indicates in a general way the basis of the alleged liability of the Laundry Company.

The alleged negligence of the Hotel Company is predicated on the fact that it permitted Jacque and the Laundry Company to use this handcart in its halls and that it permitted Jacque to do the negligent acts charged against him, as employee. Such is the alleged concurring negligence of the Hotel Company. No affirmative act of any kind is charged against the Hotel Company except so far as its passive acquiescence in the alleged negligent acts of the Laundry Company may be deemed affirmative.

The appellant assigns some thirty errors, mainly predicated on rulings on the admission of testimony and upon error in the instructions.

The defendants contend that the record indisputably discloses negligence on the part of the plaintiff himself which was the sole cause of his injury. If the defendants are right in this contention, it renders the case affirmable regardless of the errors presented by the plaintiff, as appellant. Nor for such purpose need the negligence of the plaintiff be the *sole* cause of his injury. It is sufficient if it contributed thereto. Because, therefore, of its pivotal position in the record, we give to this question our first consideration.

The plaintiff, though a guest, was not a transient. He was a roomer, who hired his room by the month. This room was on the third floor, and was one of those lying to the north of this hallway and fronting thereon. The plaintiff was thirty-nine years of age and presumably normal in his faculties. The Hotel Company was not an insurer. It owed to the plaintiff the duty of reasonable care for his safety. Bell v. Daugherty, 199 Iowa 413; Keeran v. Spurgeon Merc. Co., 194 Iowa 1240. The plaintiff himself was under equal duty to exercise reasonable care for his own safety. The Laundry Company was likewise under duty to exercise reasonable care in the performance of its contract with the Hotel Company. The three sides of the triangle were quite equal. All the parties to the case were under a measure of duty.

If negligence of the defendants were found, it must be upon the ground of the negligent method of use of the cart by interposing it as an obstacle in the pathway of guests without adequate warning or notice. The cart was not a dangerous instrumentality in the sense that an explosive or electrical wire is dangerous. The dangers attending its presence are precisely those that attach to any tangible thing which may be suddenly put, without warning, into the pathway of another without warning or notice. In other words, we may assume that the duty rested upon the defendants in their use of this cart in the hotel to give adequate notice and warning of its presence to all persons who might otherwise collide with it. It was incumbent upon the plaintiff to prove freedom from negligence on his own part contributing to his own injury. The plaintiff himself testified to the persistent use of this cart upon the hallways. This evidence was offered for the purpose of showing notice to the Hotel Company of the method of the Laundry Company in the use of this cart. It was no less notice to the plaintiff than it was to the Hotel Company. The cart was used solely by Jacque, the employee of the Laundry Company. He had no function at the hotel except the transportation of this laundry in the handcart. According to the descriptions given by the plaintiff and his witnesses, Jacque and the cart were inseparable. At the time of the accident Jacque had just come with his cart from the linen room and turned into the alcove. He stopped momentarily to open the door at the north end of the alcove. This door led into the service hall and into the freight elevator. The cart stood midway between the east and west walls of the alcove. As the plaintiff stepped out of the elevator, he saw Jacque at his left hand and within four feet of him. He testified that Jacque was opening the north door between the alcove and freight elevator when he saw him. The cart was in plain sight. The space between it and the west wall was ample. The plaintiff walked two or three steps into that space. He claims to have caught his left foot upon the cart and to have thereby tripped. He fell into the hallway ten feet away. The only excuse he offers for not seeing the cart was that he did not look. The room was light; the cart was clearly visible. Its custodian was present. The plaintiff knew that Jacque was opening the door to the freight elevator for the very purpose of taking his cart through the door to the elevator. It is difficult to conceive of anything

more that could have been done to notify him of the presence of the cart. He had no excuse of ignorance or lack of warning. It is claimed by the plaintiff that the cart in its position in the alcove extended northerly for a foot and a half into the space opposite the cage door of the elevator, and that for that reason it presented a direct obstacle to his path. But his collision was not with that end of the cart. Moreover, such position gave him a more ready opportunity to see the cart. It was in his plain view before he stepped out of the elevator.

Viewing the conduct of the plaintiff, therefore, from whatever point of view presented by the record, we think it must be said that he was clearly negligent in his own failure to see the cart under the circumstances disclosed in his own evidence. This being so, the defendants were entitled to a directed verdict. Errors, if any, become non-prejudicial as against the plaintiff. The record discloses no rejection of evidence offered by him in proof of his own freedom from negligence. He has the benefit of all the evidence offered by him on that question. On this ground, the judgment below must be, and is, accordingly affirmed.

WAGNER, C. J., and DE GRAFF, ALBERT, MORLING, and KINDIG, JJ., concur.