# R. R. BROWN v. MURPHY TRANSFER & STORAGE COMPANY AND OTHERS.[1]

November 10, 1933.

Nos. 29,502, 29,503.

[1]Reported in 251 N. W. 5.

*G. P. Mahoney* and *Bergman Richards,* for appellant Murphy Transfer & Storage Company.

*Stinchfield, Mackall, Crounse, McNally & Moore* and *Donald A. Holmes,* for appellant Witte Transportation Company.

*Moonan & Moonan* and *Gallagher, Madden & Gallagher,* for respondent.

*STONE, Justice.*

Plaintiff had a verdict against Murphy Transfer & Storage Company and Witte Transportation Company, who separately moved for judgment notwithstanding or a new trial and separately appeal from the order denying those motions. The verdict exonerates the other defendants, Lewer, Woodhall, Cunningham Company and E. W. Lewer, from liability.

The suit is for personal injuries sustained by plaintiff about one o'clock a. m. August 5, 1932. He was then a passenger in an automobile owned by defendant Lewer, Woodhall, Cunningham Company and driven by defendant E. W. Lewer. They were going south on trunk highway No. 1 just north of Farmington. The Lewer car collided with the trailer of a truck of the Witte company then parked on the pavement. In front of the Witte truck and also parked on the pavement was another owned by the Murphy company. Both trucks were near 25 and the trailer about 12 feet long. The pavement was 18 feet wide. In stopping his truck neither driver left the required clearance of 15 feet on the pavement. 1 Mason Minn. St. 1927, § 2720-24(a). Each truck was heavily loaded, both southbound. A tire on the right rear dual wheel of the Murphy truck had blown out, and its driver, Ward, had stopped the Witte truck to secure the aid of its driver, Padelford, and his tools in making the necessary tire change.

Ward had kept his truck on the pavement to the extent necessary to permit jacking up the right end of the rear axle with the jack on the pavement rather than on the shoulder. On the earthen shoulder, instead of raising its load, the jack would have sunk into the earth under the lifting force. Ward's truck was not equipped with a plank to use as base for his jack so that the operation would

have been practicable on the shoulder. He was not equipped with some other tools necessary to make the tire change. It was in the course of that operation that the accident occurred.

It is not difficult to equip trucks with flares to be used in case a machine is stalled in the nighttime on a highway. The Witte truck was so equipped, but only after the collision was one of its "flare lights" set out on the highway in the rear of the truck.

■ The negligence of both chauffeurs, Ward and Padelford, was at least a fact question. Not much fault can be found with a jury finding that, all else aside, it is negligence not to keep heavy motor trucks so equipped with tools and a plank or other adequate footing for the jack that a tire change can be made where possible without parking on the pavement. Aside from that and in the case of both drivers, the statute, 1 Mason Minn. St. 1927, § 2720-24 (a), was violated because the required clearance of 15 feet was not left for passing traffic. There is testimony for plaintiff (denied by witnesses for defendants) that the tail-lights of the Witte truck were not burning. Finally, there is the argument, good enough so that it cannot be denied as matter of law, that due care requires the proper and immediate use of a flare light when a truck is stopped on the highway in the nighttime as two were in this case.

■ Plaintiff was riding in the Lewer sedan on the right side of the front seat with his arm on the window sill. He was a guest of Lewer. There is nothing to show that he had sufficient warning of the danger to make him chargeable with negligence as matter of law because he did not warn Lewer. The issue, if any, of contributory negligence was for the jury.

■ We cannot hold as matter of law that the alleged negligence of Lewer was such a sole, independent, and intervening cause of the collision as to relieve appellants or either of them from liability. Juries are justified in finding that it is the duty of those obstructing the highway at any time to exercise a high degree of care to prevent collisions. While only ordinary care is required, it must be commensurate with the danger. The hazard in the nighttime on a traffic artery such as trunk highway No. 1 south of the Twin Cities is great. Upon Lewer also rested the duty to exercise a degree of

care commensurate with the hazard. Even if we put aside the verdict in favor of himself and his corporation and charge Lewer with negligence as matter of law, we could not put it in the category of an independent, intervening cause so as to relieve appellants or either of them of liability. It would be at best an efficient concurring cause. Anderson v. M. St. P. & S. S. M. Ry. Co. 146 Minn. 430, 179 N. W. 45; Edblad v. Brower, 178 Minn. 465, 227 N. W. 493; Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283; Johnson v. Mallory, 123 Neb. 706, 243 N. W. 872. Enough it is that evidence justifies the conclusion that the servants of both appellants were guilty of negligence "concurring with one or more efficient other causes" to injure plaintiff. Where two such causes "combine to produce injuries," the author of neither can escape liability "because he is responsible for only one of them." Palyo v. N. P. Ry. Co. 144 Minn. 398, 402, 175 N. W. 687, 689. Camp v. Wilson, 258 Mich. 38, 241 N. W. 844.

■ There is no escape for the Murphy company on the ground that the sole proximate cause of collision was the negligence of Padelford, driver of the Witte truck. Ward, driver of the Murphy truck, could well have been found to have implied authority in the emergency to employ assistance. Geiss v. Twin City Taxicab Co. 120 Minn. 368, 139 N. W. 611, 45 L.R.A.(N.S.) 382; State ex rel. Nienaber v. District Court, 138 Minn. 416, 165 N. W. 268, L. R. A. 1918F, 200; Booth & Flynn v. Price, 183 Ark. 975, 39 S. W. (2d) 717, annotated, 76 A. L. R. 957, 963. He did no more in stopping the Witte truck and asking aid from its driver. For the time being the latter may be considered a coemploye with Ward of the Murphy company. So, if he was negligent, the latter is liable under the doctrine of *respondeat superior*. It is rather obvious that the Murphy company had the right of control over the Witte company driver while the latter was assisting in repairing the former's truck.

■ It cannot be held as matter of law that the conduct of Ward, the driver of the Murphy truck, if negligent, was not a proximate cause of plaintiff's injury. We cannot say that Ward's conduct was only a "necessary antecedent" and not "a responsible cause," nor can we say, against the necessary implication of the verdict, that it

did not have a "natural tendency to produce, in the ordinary course of nature," the result complained of, within the rule of Fitzgerald v. International F. T. Co. 104 Minn. 138, 149, 116 N. W. 475.

With no regret we decline the invitation of the case to add to the already excessive literature of the law dealing, or attempting to deal, with the doctrine of proximate cause, much of which both "in case and in commentary is mystifying and futile." Cardozo, Paradoxes of Legal Science, 85. The search is for the "jural cause." Id. 82. There is enough in the evidence to sustain the conclusion that the concurring negligence of the two truck drivers made such a cause.

■ Neither can the Witte company prevail as matter of law on the ground that Padelford, its chauffeur, had left its employ for the time being and become temporarily the servant of the Murphy company. True, the tire change was the operation and solely for the benefit of the Murphy company. If it be assumed that the Witte company had no right of control over that operation, the fact remains that it retained the right to control Padelford in the management of its own truck. That power it never lost for an instant. The jury doubtless considered that both drivers were negligent and that the whole operation was so far unitary that the negligence of each contributed proximately to the result.

■ The verdict was for $18,000. Plaintiff is the judge of probate of Waseca county. He is 56 years of age. The bony structure of his right elbow was shattered. It was an exceedingly painful injury, from which he suffered much and long. He was hospitalized for 43 days. His special damages amount to over $1,200. He has what is termed a "flail" right arm, the permanent loss of use of which will be somewhere from 50 per cent to 100 per cent according to the medical testimony.

The cases cited for plaintiff prevent, as far as precedent goes, any interference with the verdict even by way of conditional reduction. Among them are Madole v. C. R. I. & P. Ry. Co. 161 Minn. 535, 201 N. W. 937 (arm amputated above wrist, stiffened elbow, verdict for $15,000 sustained) ; Greer v. G. N. Ry. Co. 115 Minn. 213, 132 N. W. 6 (hand caught in machinery and arm torn from socket,

verdict for $15,000 sustained); Fry v. M. St. P. & S. S. M. Ry. Co. 141 Minn. 32, 169 N. W. 147 (arm crushed, bones failed to reunite, $15,000 verdict not excessive); Carlson v. Payne, 150 Minn. 480, 186 N. W. 291 (both arms amputated between elbow and shoulder, six inches right, four inches left arm remain; new trial ordered unless plaintiff consent to reduction of verdict from $57,500 to $45,000); Roeder v. Erie R. Co. 164 N. Y. S. 167 (arm off at shoulder, verdict of $32,500 sustained); Clumfoot v. St. Clair Tunnel Co. 221 Mich. 113, 190 N. W. 759 (one arm lost below elbow and both feet partially disabled by electric burns; there was also some nervous disturbance; verdict for $30,000 sustained); Smith v. St. Joaquin L. & P. Corp. 59 Cal. App. 647, 211 P. 843 (boy seven years old lost arm below elbow; $20,000 held not excessive); Hellerich v. Central Granaries Co. 104 Neb. 818, 178 N. W. 919 ($18,900 not excessive recovery by live stock buyer, 28 years old, whose right arm was amputated and left arm broken); Alabama & V. Ry. Co. v. Dennis, 128 Miss. 298, 91 So. 4 (arm amputated between wrist and elbow, verdict for $25,000 reduced to $18,000); Fort Worth & D. C. Ry. Co. v. Williams (Tex. Civ. App.) 275 S. W. 415 (left arm crushed and shortened, verdict $18,000 sustained).

In many of these cases, especially those involving injury to railroad employes, there was evidence, lacking here, of substantial loss of earning power. There is no suggestion that plaintiff's injuries have permanently impaired his ability as judge of probate or that they have affected his mental powers. It cannot be supposed that they will have deleterious effect on his political prestige. But what the jury might have found was that the practical destruction of his right arm, a very important member, together with the long period of excruciating pain and the permanent disfigurement, all make an argument of such imposing aggregate that, while the verdict may seem excessive to some, we cannot hold it enough so to justify ourselves in ordering its conditional reduction. It is too much to expect even approach to uniformity in the assessment of damages in such cases by juries. The same human factors of disagreement apply in the consideration of the question by appellate courts. It is so peculiarly one of fact that the jury's judgment is not to be

interfered with except in cases so clear as to make a new trial or conditional reduction necessary in the interests of justice. We are unable to say that this is such a case.

■ At the opening of the trial a most unusual thing occurred. The veniremen were in the box. At that juncture counsel for plaintiff requested that they be allowed to question defendant Lewer "before the court examines the jurors * * * with reference to getting some information for the purpose of exercising a challenge." Defendant Lewer was then sworn and testified that neither he nor his corporation, Lewer, Woodhall, Cunningham Company, the owner of the sedan which collided with appellants' trucks, carried any liability insurance at the time of the accident and that "no insurance company" was defending the action for either Lewer or the corporation. That sort of procedure is indefensible. If insurance companies are defending, counsel for plaintiff may inquire of prospective jurors whether they are connected with or interested in the insurer so defending. Viou v. Brooks-Scanlon Lbr. Co. 99 Minn. 97, 108 N. W. 891, 9 Ann. Cas. 318; Scholte v. Brabec, 177 Minn. 13, 224 N. W. 259. But knowledge of insurance or the lack of it and the identity of the insurer, if any, is ordinarily obtainable and frankly furnished if requested before the trial and, in any event, in the absence of prospective jurors. If such information had been requested and refused, another case would be presented very different from that disclosed by this record. No excuse is suggested for parading defendants Lewer and the Lewer corporation before the jury for the purpose of showing that they had no insurance. That fact might have carried an effective implication of the propriety, from the local viewpoint, of placing the liability, if any, upon the two defendants who were insured and whose defense was being conducted by the insurers. Counsel for plaintiff had no excuse for parading the situation and emphasizing it as they did at the outset of the trial. But no objection to the procedure was made at the time, and it was not specified as error in the motion for a new trial, so it is not available to appellants now. Hence what we say here is for the purpose only of preventing as far as may be similar procedure in other cases where it is inexcusable.

On both appeals the orders are affirmed.