MRS. GRACE TROUT, Appellee, v. VICTOR TALERICO, doing business as TALLY-HO CLUB, Appellant.

No. 46803.

FEBRUARY 5, 1946.

Herrick, Sloan & Langdon, of Des Moines, for appellant.

Hallagan & Cless, of Des Moines, for appellee.

HALE, J.—This is an action brought by Mrs. Grace Trout against Victor Talerico, doing business as the Tally-Ho Club, for injuries sustained by plaintiff in a collision with a waitress employed by defendant. Plaintiff, a resident of Omaha, was in the Tally-Ho Club on the evening of July 8, 1944. She collided with a waitress, Mrs. Barkley, who was carrying two cups of hot coffee. The coffee spilled on plaintiff's forearm and on her leg, burning her. Plaintiff in her petition alleges negligence of the waitress and lack of contributory negligence on her part. Defendant denies the charges of negligence and alleges that plaintiff's injuries were due to her own contributory negligence. Defendant's motion for directed verdict was overruled and verdict rendered in favor of plaintiff. Motion for judgment notwithstanding verdict was overruled.

There are two errors assigned: (1) that the court erred in overruling defendant's motions and (2) that the court was in error in sustaining plaintiff's objection to the admission of certain testimony of defendant offered on redirect examination.

The Tally-Ho Club is a restaurant owned and operated by defendant and located at 5601 Douglas Avenue, in Des Moines. The dining room is thirty-two feet north and south and thirty feet east and west. Guests enter the building through a door in the east wall north of the dining room, going into a hall, at the west end of which are rest rooms. From the hall they pass into the dining room by turning left through an archway about the middle of the north wall of the dining room. Inside the dining room, in its northeast corner, just east of the archway, is a coffee-making table where the waitresses obtain coffee to serve to the patrons. There are booths along the west, south, and east walls of the dining room and in each of the four corners is a circular booth. In the center part of the dining room are movable tables and chairs. There are three booths along the west wall of the dining room between the southwest and northwest circular booths.

On the evening in question plaintiff and her husband,

a serviceman home on furlough, plaintiff's fifteen-year-old daughter, Mr. Trout's mother, and Mr. and Mrs. Paul Beck, a party of six, had been visiting at the home of a relative, Mr. Fred Lorenz, in Des Moines. About 7 p. m. the six persons named went to the Ta'ly-Ho Club, arriving there about 7:10 p. m. They waited in the room north of the dining room until a table was available and then passed into the dining room, where they were seated at a table slightly to the west of the center of the room and approximately seven feet south and a little west of the archway in the north wall. Their table ran east and west and was made by putting two small square tables together. North of the table at which they were seated there were no tables but there was one small table to the east, so that there was a passageway seven feet wide north and south, extending from the coffee table past their table to the west side of the room. Mr. Beck sat at the east end of the table and Mrs. Beck at the west end. Plaintiff sat on the south side of the table next to Mr. Beck and her mother-in-law sat on the same side next to Mrs. Beck. Plaintiff's husband sat on the north side immediately opposite plaintiff and at Mr. Beck's right, with the daughter immediately west, facing Mrs. Catherine Trout. They were all engaged in conversation while eating, and plaintiff testified her husband arose and left the table. Before he returned and before she had finished her meal plaintiff got up to go to the rest room. She testified that when she arose from the chair she stepped in an easterly direction around behind Mr. Beck's chair and then walked north headed toward the archway; that after she passed Mr. Beck she saw the waitress approaching from the east carrying two cups of coffee in her left hand, and called to her; that the waitress was not looking ahead but was looking over her right shoulder and continued to do so. Plaintiff then backed up past Mr. Beck's right arm and against the table. There was a great deal of noise and plaintiff did not think the waitress heard her call out. It all happened very swiftly and there was very little time to do anything, but plaintiff insists the waitress was not looking ahead. It seemed to plaintiff that Mrs. Barkley was six or seven feet away when plaintiff first saw

her. Thus the waitress was approaching plaintiff from the latter's right side when she backed to the table. The waitress started to stop but dumped the coffee forward upon plaintiff. Plaintiff's dress was soaked and her arm burned and her leg also burned but to a less degree. After the collision plaintiff immediately went to the rest room, where salve was applied to the burn, and thence to the home of Mr. Lorenz, and the next day, Sunday, returned to her home in Omaha.

Mrs. Barkley's version of the accident is that she had been at the coffee table in the northeast corner of the room and was carrying the coffee and was walking west; that she saw Mrs. Trout standing on the north side of the table and that she herself was walking in about the center of the open space north of the table at which plaintiff's party was seated, and that as she got to a point opposite the table Mrs. Trout whirled and bumped into her and that plaintiff did not look around before she turned.

Mrs. Robert Carson, witness for defendant, who was waiting in the hall immediately north of the archway and looking into the dining room, testified also that she saw plaintiff at the north side of the table facing south and that she suddenly turned to the right as the waitress came from the east and hit the waitress with her elbow. To the same effect was the testimony of Mrs. Howard Stolp, seated in one of the booths on the west side of the dining room; C. M. Reppert, in a booth on the west side; Joe and Doris Phillippson, also in one of the west booths; and Floyd C. and Mrs. Irene Taylor.

I. The testimony of plaintiff's witnesses is in most respects directly opposed to that of witnesses for defendant, plaintiff's evidence showing negligence on the part of defendant's employee, while the testimony of witnesses for defendant is to the effect that the collision was the fault of plaintiff, either in not observing or failing to pay any heed to the approach of the waitress. Thus there is a direct conflict in the testimony. Where there is such, under our many holdings the rule is so well established that authority need

not be stated therefor, the question becomes one for the jury to determine.

Defendant argues that under the most favorable evidence in this case plaintiff was guilty of contributory negligence. We do not so find. Under the evidence introduced by plaintiff it was shown that the waitress was within a very close distance at the time she was discovered by plaintiff.

Defendant argues that plaintiff voluntarily placed herself in a position of danger which could be seen and appreciated and is therefore guilty of contributory negligence as a matter of law. We do not agree with this theory. The evidence fails to show that until immediately before, and almost at the time the collision occurred, there was anything which would tend to warn or charge plaintiff with any knowledge of impending danger. Or, if there was danger, nothing in the testimony shows that it was seen or appreciated. Defendant cites Snyder v. Heuer, 184 Iowa 538, 168 N. W. 878; Walker v. Roosevelt Hotel Co., 214 Iowa 1150, 241 N. W. 484; Aita v. John Beno Co., 206 Iowa 1361, 222 N. W. 386, 61 A. L. R. 351; and Boles v. Hotel Maytag Co., 218 Iowa 306, 253 N. W. 515. An examination of these cases will show that the facts in none of them have application to the facts here. These were cases of injury in which the evidence showed defendant was exercising no care for his own safety whatever and not maintaining a lookout.

There were but two courses open to plaintiff. One was to walk across the line on which the waitress was approaching and the other to move backward. If, after seeing the waitress, she did not adopt the best and safest method of avoiding the collision she still would not necessarily be guilty of contributory negligence. Had she proceeded to the north and the collision occurred she might be charged with negligence more readily than if she attempted to back away from what appeared to be immediate danger. Plaintiff's testimony shows that she did attempt to avoid the oncoming danger. The time between her first view of the waitress and the collision could be measured only in fractions of seconds and failure to pursue the right method of avoiding

danger would not be chargeable to her. Plaintiff cites In re Estate of Kern, 141 Iowa 620, 632, 118 N. W. 451, 455. The opinion in that case states:

"We need not cite cases in support of the principle that where one places another in a position of peril, he has no right to expect circumspect conduct. In such circumstances it is for a jury to say whether or not the other party acted with that thought and prescience that one placed in a dangerous position was likely to adopt, and whether under all the circumstances he was negligent. Indeed the better rule here is that, if a defendant by his own negligent acts throws one off his guard or puts him in peril, the conduct of the person placed in the perilous position will not be regarded as contributory negligence under any circumstances."

See, also, Lundien v. Fort Dodge, D. M. & S. Ry. Co., 166 Iowa 85, 147 N. W. 308; Short v. Powell, 228 Iowa 333, 291 N. W. 406; and Stafford v. Gowing, 236 Iowa 171, 18 N. W. 2d 156. Plaintiff also cites Eby v. Sanford, 223 Iowa 805, 273 N. W. 918.

The jury heard the testimony of the witnesses and were the judges of their credibility and chose between the two versions of the facts as related and accepted that of plaintiff. We are satisfied that under the testimony it became a fact question for the jury and the determination of the jury, who heard the evidence and saw the witnesses, cannot be interfered with on appeal. We hold the case was properly submitted by the court.

II. Defendant charges that the court erred in sustaining objection of plaintiff's counsel to certain testimony of defendant. In order to make clear just what the objection refers to we set out such testimony.

Victor Talerico, called as a witness in his own behalf, on direct examination testified that he had never talked with Mrs. Trout after she left Des Moines before the time she sued him. On cross-examination plaintiff's attorney asked:

"Q. Well, she never talked to you prior to bringing suit against you but she wrote to you, didn't she? A. She

wrote me a letter and wanted to know if I had insurance, that she had an attorney ready for to make a claim for it. Q. You did not reply to the letter? A. Well, I didn't reply, no, but it was replied. Q. You still have the letter? A. I think I can get it. Q. The letter that Mrs. Trout wrote you? A. Well, I gave it to—I don't know whether I can find it or not but I will try it. Q. Will you do that please? I am speaking of the letter that Mrs. Trout wrote you, not some letter that some lawyer wrote. A. That is the only letter I received. Q. A letter that a lawyer wrote you? A. That is right. Q. You did not have a letter from Mrs. Trout? A. No, sir. Q. You didn't have one at all? A. No, sir. Q. Didn't she write you in substance that because of the nature of her injuries she thought she would rather return to Omaha and have treatment there instead of going to Dr. Gray? A. No, sir, I never had a letter from her like that. Q. I see. You never replied to any letter that you did get? A. No, sir."

On redirect examination by defendant's attorney:

"Q. One more question. I think that you said that you got this letter inquiring as to whether you had insurance. Was that replied to? A. Yes, that was replied. Q. What did you direct in that reply?"

Objection thereto was sustained. Counsel for defendant then asked:

"Q. What is the fact as to whether your attorney informed Mrs. Trout that you did not have insurance?"

Objection thereto was sustained. The court said:

"I regard that matter, gentlemen, as having inadvertently occurred. Otherwise, I would permit the question."

After some argument by counsel defendant offered to show, if the witness were permitted to explain on redirect examination, that he did reply to Mrs. Trout or her attorney advising her of the fact that he did not have insurance and that was in response to her inquiry or that of her attorney, to which question the court sustained objection of plaintiff.

It is now claimed by defendant that the court was in error in refusing to permit the defendant to answer the question as to whether or not he informed Mrs. Trout that he did not have insurance and to testify that he did reply to Mrs. Trout or her attorney advising her of the fact that he did not have insurance, for the following reasons: (1) The subject matter of this testimony was gone into by plaintiff's counsel on cross-examination of Mr. Talerico (2), since this subject matter was gone into by plaintiff's counsel on cross-examination it was error to refuse to permit defendant on redirect examination to explain his answer on the theory that it is provided by statute in this state that where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, and that when a letter is read, all other letters on the same subject between the same parties may be given (3) because, by refusing to permit defendant to explain his answer given on cross-examination, the jury was left with the impression that he had insurance covering the claim, which was not the fact, and defendant was entitled to have the jury know it was not the fact.

The Code sections referred to are sections 11272 and 11273. In support of his claim of error defendant cites State v. Hudson, 110 Iowa 663, 80 N. W. 232; Stickling v. Chicago, R. I. & P. R. Co., 212 Iowa 149, 232 N. W. 677; Azeltine v. Lutterman, 218 Iowa 675, 254 N. W. 854; and Luin v. Chicago Grill Co., 138 Iowa 268, 115 N. W. 1024. We need do no more than refer to these cases. They merely illustrate and follow the provisions of the Code.

This, however, is a case of different character and much different in the facts from the cited cases. In the first place, plaintiff argues that a defendant in a damage suit may not offer testimony that he does not carry liability insurance, as it is immaterial to any issue involved in the case. Citing Taulborg v. Andresen, 119 Neb. 273, 228 N. W. 528, 67 A. L. R. 642; Brown v. Murphy Transfer & Storage Co., 190 Minn. 81, 251 N. W. 5.

As a second proposition plaintiff argues that when a

party to a lawsuit is a witness, and without interrogation as to the contents of a letter of his adversary, volunteers such contents, he does not thereby, under sections 11272 and 11273 of the Code, or otherwise, lay the foundation for admission of his reply thereto. There is no doubt that the general rule does not permit the admission of testimony that the defendant is insured and this rule is well established in Iowa. See Miller v. Kooker, 208 Iowa 687, 224 N. W. 46, 225 N. W. 868; Ryan v. Trenkle, 199 Iowa 636, 200 N. W. 318, cited by plaintiff. In Brown v. Murphy Transfer & Storage Co., supra, 190 Minn. 81, 88, 251 N. W. 5, 8, there was an effort made by defendant to show that he was not insured. The court stated:

"That sort of procedure is indefensible. If insurance companies are defending, counsel for plaintiff may inquire of prospective jurors whether they are connected with or interested in the insurer so defending. * * * But knowledge of insurance or the lack of it and the identity of the insurer, if any, is ordinarily obtainable and frankly furnished if requested before the trial and, in any event, in the absence of prospective jurors. If such information had been requested and refused, another case would be presented very different from that disclosed by this record. No excuse is suggested for parading defendants Lewer and the Lewer corporation before the jury for the purpose of showing that they had no insurance. That fact might have carried an effective implication of the propriety, from the local viewpoint, of placing the liability, if any, upon the two defendants who were insured and whose defense was being conducted by the insurers. Counsel for plaintiff had no excuse for parading the situation and emphasizing it as they did at the outset of the trial."

See Piechuck v. Magusiak, 82 N. H. 429, 135 A. 534, which holds that the whole subject is foreign to the issue to be tried and its introduction should be avoided whenever it is practicable to do so. See, also, Graves v. Boston & M. R. R., 84 N. H. 225, 149 A. 70; and Davis v. Underdahl, 140 Or. 242, 13 P. 2d 362. Also it has been held by various

authorities that where the question of insurance was inadvertently injected into the case, or where it was volunteered, unresponsive, and incidental, the statement is not prejudicial. Remer v. Takin Bros. Freight Lines, 230 Iowa 290, 297 N. W. 297; Floy v. Hibbard, 227 Iowa 154, 289 N. W. 905; Johnston v. Calvin, 232 Iowa 531, 5 N. W. 2d 840; and Pierce v. Dencker, 229 Iowa 479, 294 N. W. 781. See, also, Jimmie Guest Motor Co. v. Olcott, Tex. Civ. App., 26 S. W. 2d 373; Reitz v. Yellow Cab Co., 248 Ill. App. 287; Chambers v. Hawkins, 233 Ky. 211, 25 S. W. 2d 363; and Deffenbaugh v. Inter-State Motor Freight Corp., 254 Mich. 180, 235 N. W. 896. Also, Clayton v. Wells, 324 Mo. 1176, 26 S. W. 2d 969; and Taulborg v. · Andresen, supra, and cases cited.

We do not think that the statute requiring all of the conversation or contents of a letter applies in the present case. In the first place, as the court clearly said, it was inadvertent. The question directed to the defendant was not as to the contents of the letter and no effort was made to show what the contents were. On the contrary, the offer of the testimony by the defendant was entirely unresponsive, was injected by him as a volunteer statement and not called out by the question propounded, which could have been properly answered by yes or· no. The only question asked of the defendant in reference to a letter was: ''Well, she never talked to you prior .to bringing suit against you but she wrote to you, didn't she?'' The answer was: "She wrote me a letter and wanted to know if I had insurance, that she had an attorney ready for to make a claim for it.'' Such a volunteer statement on the part of defendant, with no foundation laid whatever nor anything asked for which would indicate an inquiry as to the contents of the letter, would not be sufficient foundation to invoke the statutory rule. Were it otherwise, the witness who thus paves the way for the introduction of testimony places in the hands of a party to an action the power to enforce reception of self-serving declarations or other incompetent testimony by volunteering the contents of a letter received.

We think the court was correct in not permitting this volunteer reference to the contents of the letter, not asked for nor sought, to be enlarged upon and developed as in cases where a portion of the contents of a letter are given. It characterized it as inadvertent and for that reason also we think it is not admissible. We find no error in the ruling of the court upon this subject.

We are satisfied that the court was correct on both the propositions argued. In view of such holding the case is affirmed.—Affirmed.

All JUSTICES concur.